**HIATT, Warden, v. COMPAGNA et al.**

No. 12715.

United States Court of Appeals
Fifth Circuit.

Nov. 10, 1949.

Rehearing Denied Dec. 16, 1949.

J. Ellis Mundy, U.S. Atty. and Harvey H. Tisinger, Asst. U. S. Atty., Atlanta, Ga., A. E. Gottshall, Atty. Dept. of Justice, Washington, D. C., for appellant.

M. Neil Andrews, Atlanta, Ga., Wm. Scott Stewart, Chicago, Ill., for appellee.

Before HOLMES, WALLER, and SIBLEY, Circuit Judges.

SIBLEY, Circuit Judge.

Appellees Compagna and Gioe were convicted, together with others, in the Southern District of New York and each received a sentence of ten years imprisonment, affirmed United States v. Compagna, et al., 2 Cir., 146 F.2d 524, certiorari denied, 324 U.S. 867, 65 S.Ct. 912, 89 L.Ed. 1422. Having served one-third of their sentences they were placed on parole August 13, 1947. Unfavorable newspaper publicity followed, and an investigation. was had by a committee of Congress of the operations of the Parole Board and particularly of this case. The Board members who granted these paroles were out of office, and the then members testified they knew of no ground to revoke them. The committee, however, reported, among other things, that the Board had agreed to take definite action by June 19, 1948, on the committee's request that these paroles be revoked. On July 21, 1948, Judge Rogers, one of the three Board members, issued warrants in the usual form reciting that "reliable information has been presented to the undersigned member of this Board that the said paroled prisoner named in this warrant has violated the conditions of his parole, and the said paroled prisoner is hereby declared to be a fugitive from justice"; and ordering his arrest and return to the penitentiary. Both parolees were promptly arrested and brought to the Atlanta Penitentiary. Each on September 2, 1948, filed a lengthy application for habeas corpus, attacking the validity of their trial and sentence; and attacking the warrants issued by Judge Rogers because of the Congressional enquiry and the testimony therein of each Board member that there had been no breach of parole. The applications further alleged there had not since been any breach of parole and Judge Rogers had no reliable information of any; that the Board had appointed a hearing for September 8, 1948, but had announced no counsel would be heard. The prayers were that the Court declare the conviction and warrants to be void and the Board without jurisdiction;

and alternatively that the Board be ordered to return the parolees to their home in Chicago where they were arrested, and give them a hearing there according to the Administrative Procedure Act, with counsel and witnesses present and a reporter furnished by the Board or paid by applicants. The applications set out the grounds which the Board had notified each applicant would be investigated as justifying the revocation of his parole. On September 20, 1948, the applications were amended to allege that two members of the Board, not including Judge Rogers, had in Atlanta on September 8 conducted a hearing in which applicants denied the charges made against them and were cross examined on them, a Court reporter taking notes, but that no other evidence was introduced and representation by counsel was denied, and the Board refused to comply with the Administrative Procedure Act; and that the matter was continued and referred to Washington.

The only respondent named is the Warden of the Atlanta Penitentiary, who is not a member of the Board. He answered that he was holding the applicants for habeas corpus under their original sentences, and under the warrants of Judge Rogers which he said were valid; that the Administrative Procedure Act had no application, but the parole system was a thing sui generis, administered by the discretion of the Board and exempt from judicial review by the language of the Administrative Procedure Act; and that the conduct of the Board is not reviewable by habeas corpus, parole being a matter of grace and not a legal right.

The responses were traversed, habeas corpus writs issued, and a full hearing was had on the two petitions together. Interrogatories of like tenor were propounded to Judge Rogers, and to the other two members of the Board, one of whom was appointed since the Congressional investigation. Judge Rogers was away from home and made no answers. Chairman Killinger answered that counsel had asked to meet with the Board but had been refused because that procedure was not required by the Parole Statute and was not followed by the Board; that he was advised that the Administrative Procedure Act is inapplica-

ble to the Board; that in reply to counsel's request he had written an exhibited letter, enclosing a copy of the Board's Rules and Regulations, and giving assurance that only conduct since parole would be considered; that the Board would be glad to confer with counsel at its office in Washington or consider any pertinent information in behalf of the parolees, but it had never been the Board's policy to admit counsel to its deliberations or when it interviews the prisoner; that the procedure of a criminal trial was not necessary to a determination of the question whether the welfare of society would be promoted by the granting, revocation, or modification of a parole. It concluded: "To sum up, it is our position that a formal hearing of the kind you seek is not provided for by the statute. We shall, however, be glad to have you submit in writing, or in person at our headquarters, any material or information bearing on these cases." He further testified that all appearances of prisoners before the Board are stenographically reported, running into hundreds at every meeting of the Board, the notes are transcribed in Washington and each case thereafter separately considered by the Board members, so that some delay is inevitable; but that there would be no unnecessary delay in deciding the cases of applicants. Several interrogatories he declined to answer, and the Board's files he refused to produce, because they involved matters then pending before the Board for decision. Board member Monkiewicz answered to the same effect. No effort was made to force further answers.

■ The district judge declined for want of proof to hold invalid the sentences, which were attacked as based on perjured testimony knowingly used, and on a conviction for a conspiracy as made in New York, but really made, it at all, in Chicago. Moreover, Revised Title 28, Sec. 2255, requires that such an attack be presented to the court which tried the case.

■ The district judge apparently thought the Administrative Procedure Act, 5 U.S.C.A. § 1001, and following, has no application to the procedures of the Parole Board in granting paroles, revoking, or modifying them, though he did not express-

ly so rule. It has never been thought applicable by the Board or the Attorney General who appoints its members and approves its rules. The full dress procedure it requires would render it practically impossible for the Board to handle its business. A prisoner sentenced to the penitentiary is turned over by the court to the executive, namely the Attorney General, to have the sentence executed. That the term may be shortened by good conduct, or that the imprisonment may be ameliorated by serving it outside the prison walls on parole. See Anderson v. Corall, 263 U.S. 193, 196, 44 S.Ct. 43, 68 L.Ed. 247, is a legislative grace and not a thing of right. The legislature may affix such conditions and provide such administration as it will. Courts have no function, except as the statutes give them power. As respects parole, the original statutes, as well as the revision now of force, bristle with discretion given the Board, and are silent about court interference. Revised Title 18, Sec. 4202, provides that certain classes of prisoners "may be released on parole". Section 4203, prescribing no sort of hearing, and leaving it to the "opinion of the Board", says "the Board may in its discretion authorize the release of such prisoner on parole", under conditions fixed "in the discretion of the Board," he remaining "in the legal custody and under the control of the Attorney General". Section 4205 provides: "A warrant for the retaking of any United States prisoner who has violated his parole, may be issued only by the Board of Parole or a member thereof and within the maximum term or terms for which he was sentenced." Section 4206 requires designated officers to execute the warrant "by taking such prisoner and returning him to the custody of the Attorney General", that is, to the prison. Section 4207 is: "A prisoner retaken upon a warrant issued by the Board of Parole, shall be given an opportunity to appear before the Board, a member thereof, or an examiner designated by the Board. The Board may then, or at any time in its discretion, revoke the order of parole and terminate such parole or modify the terms and conditions thereof." There is nothing in the present statute, of force since September

ber 1, 1948, requiring that the warrant be based on "reliable information" as stated in the former Title 18, Section 717. It is very evident that the whole matter of paroles is left to the informed discretion of the Board. Court action is not made a part of it. The Administrative Procedure Act, in authorizing court review of the acts of the agencies which it governs, as to them excludes such action when "(1) statutes preclude judicial review or (2) agency action is by law committed to agency discretion." 5 U.S.C.A. § 1009. Certainly no review of what the Board is doing or has done can be undertaken by habeas corpus where the Board is not a party, and no such directions can be given it as these applications pray for.

The district judge, however, held that the uncontradicted testimony of the two applicants was that Judge Rogers could have had no "reliable information" of parole violation, for there was no violation, and his warrants, issued in August, 1948, were void, ignoring the change in the statute effective September 1, 1948, and that the Warden could not hold the prisoners though the Board had already interviewed them and had under advisement the revocation of their paroles. On December 4, 1948, he gave judgment for the discharge of the applicants from custody after fifteen days, unless within that time the Board or a member becomes possessed of reliable information of parole violation during the fifteen days and a new warrant is issued.

Within the fifteen days the Board rendered an order revoking the paroles, and certification thereof was made to the Warden. He made a motion to reconsider the judgment and presented this order to the court, and asserted that he now holds custody, not under the warrants of Judge Rogers, but under the order of the Board revoking the paroles. This motion was entertained and a show-cause order granted. Without further evidence the motion was denied on the ground that, "the revocations of parole were based on illegal Parole Violator Warrants and were issued without fair hearings and in my opinion are invalid." The only basis for saying there was no fair hearing is this recital in the

judgment: "On what grounds or on what evidence, if any, other than the mere revocations, is not shown, but the Court and petitioners are still left in the darkness which shrouded the habeas corpus trials in which the members of the Board declined to even state what violations of the parole were charged and indicated that no hearings would be granted petitioner other than the 'appearances' they had had before the Board. These 'appearances' fall far short of the fair hearing which the law contemplates." Appeals are taken from both judgments.

1. The district judge incorrectly states that the Board declined to state what violations of parole were charged. At the time of arrest each prisoner was notified in writing of the charges, three against Compagna and five against Gioe; and each exhibited his notice in his original pleading. If the warrants were irregular, they served to bring the parolees before the Board, which has a continuous and exclusive jurisdiction over them in respect of their paroles. They knew the charges against them, and were given the "appearance" which the statute says shall be afforded them. The law does not provide for any other "hearing". Irregularity in the arrest of an alien does not invalidate deportation proceedings otherwise conformable to law. United States ex rel. Bilokumsky v. Tod, 263 U.S. 149, 158, 44 S.Ct. 54, 68 L.Ed. 221; nor in general does an unlawful arrest prevent a court from trying one on a valid charge of which it has jurisdiction; 22 C.J.S., Criminal Law, § 144; 14 Am. Jur., Criminal Law, § 219. Parole revocation is informal and discretionary, and we see no need of starting afresh with a new warrant, if after affording due "appearance" the Board is satisfied that parole ought to be revoked, and has revoked it. The warrant has become unimportant.

2. The Chairman, Dr. Killinger, was not a Board member when the Congressional enquiry was made. None of the present members had anything to do with the grant of the paroles then under enquiry. They are under no incapacity to do their duty. The Chairman by letter offered to let counsel come before the full Board in Washington and present any material or information bearing on the cases, though he declined to have a full scale trial. This was not unfair. The refusal to answer some interrogatories was due to the belief, we think well grounded, that the court had no part in the Board's deliberations about the paroles. The requirements as to procedure in the Administrative Procedure Act have no application to the Parole Board. Its procedure is fixed by a later statute, Revised Title 18, Chapter 311, Parole. We are aware that in Fleming v. Tate, 81 U.S.App. D.C. 205, 156 F.2d 848, it was held that the statute, then 18 U.S. C.A. § 719, in stating that a paroled prisoner returned to custody "shall be given an opportunity to appear before said board of parole", meant he should have an effective hearing, including assistance of counsel, and the long practice otherwise was unlawful. The decision would seem to invalidate on habeas corpus a vast number of parole revocations. Congress, in revising the parole law, Revised Title 18, Sec. 4207, changed the wording to read: "A prisoner retaken upon a warrant issued by the Board of Parole, shall be given an opportunity to appear before the Board, a member thereof or an examiner designated by the Board." This change cuts deeply into the idea that the appearance is to be a trial. An examiner may conduct it now, and it would seem that the taking of the testimony of the prisoner, and perhaps his witnesses, is alone contemplated. The Chairman's formal offer to counsel that he appear before the Board in person or in writing and present what he desired, followed by the appearance in person of the prisoners before two members of the Board who heard and preserved the record of what they had to say, we think is a sufficient opportunity to appear. We think the district court erred in holding the orders revoking those paroles are nullities, not justifying the Warden in holding the prisoners.

3. When Anderson v. Corall, 263 U.S. 193, 44 S.Ct. 43, 68 L.Ed. 247, was decided, the Warden of a penitentiary was always a member of its board of parole,

and he was specifically authorized to issue a warrant for a parole violator. He was a proper person to defend an attack on the board by habeas corpus. Under the present law the Warden has no part in parole matters, knows nothing about what the Board does in Washington, and is in no position to explain or defend its proceedings. The use of habeas corpus against the Warden to reach a wrong in the Board's procedure, if there be such, is not to be encouraged. In Bowers v. Dishong, Marshal, 5 Cir., 103 F.2d 464, this Court held that habeas corpus would not lie to test judicially whether parole violation had occurred. Again in Fox v. Sanford, 5 Cir., 123 F.2d 334, we held habeas corpus was not available to test the sufficiency of information of parole violation to justify the Board's warrant. The Sixth Circuit, in United States v. Barc, 141 F.2d 480, held that a court should not by habeas corpus interrupt the procedure by the Board which the statute prescribes. The Fourth Circuit, in United States v. Nicholson, 78 F.2d 468, held that the remedy for the Board's failure to give a proper appearance before it is not habeas corpus, but a direct proceeding in mandamus against the Board in the District of Columbia. A similar ruling was made in United States v. Dillard, 4 Cir., 102 F.2d 94. If a revocation of a parole can ever be attacked collaterally by habeas corpus against the Warden, it ought to be nullified only on plain evidence and a full hearing. The district court here held that the warrant was invalid and that all that followed was void, and did not try at all the Warden's pleading presenting the orders of revocation, but hastily condemned them on the further ground that the hearing was unfair, and released the prisoners from the Warden's custody.

The judgments appealed from are reversed and the appellees are directed to be remanded to the custody of the Warden, with leave to the applicants, if so advised, to enlarge their pleadings so as to present, if they can, a case of total nullity of the orders revoking their paroles under which they are now held.

WALLER, Circuit Judge, dissenting.

In my study of this case the following viewpoints have developed:

1. The appellees were lawfully paroled.

2. Between the dates of their parole and their re-arrest and reincarceration, they had committed no violation of the conditions of their parole.

3. That the Parole Board, neither at the time of the issuance of the warrant declaring the parolees to have violated the conditions of the parole and to be fugitives from justice, nor at the time of revocation of parole, had any "reliable information", or information of any kind, that the parolees had violated the conditions of parole.

4. That the provisions of the statute requiring the Board after the issuance of a warrant and before revocation of parole, to afford parolees an opportunity to appear before the Board, were intended to require the Board to comply with the Constitutional prohibition against the deprivation of liberty without an opportunity to be heard, and the appearance allowed parolees in this case afforded no such opportunity to be heard as the law and the Constitution contemplate.

5. That one who has rightfully earned and lawfully achieved parole has a status—call it what you will—which he has the right to defend and of which he cannot be deprived except by due process of law, to be afforded either by the Board or, upon its failure, by the courts.

6. Neither adverse newspaper criticism of the granting of parole or a demand or request by a sub-committee of the Committee on Expenditures in the Executive Department of Congress can lawfull supplant the requirement of the statute for "reliable information of violation of parole".

7. That the Parole Board cannot rightfully revoke a parole lawfully granted without cause or grounds for such revocation and the failure of the Board to acquaint either the parolees or the Court below with any grounds for the revocation of the parole should be taken as proof not only that there were no such grounds but also

should be taken as a deprivation of liberty without due process.

8. The case must be judged by the law as it existed July 1, 1948, or at the time of the issuance of the warrants for the arrest, and not by the New Judicial Code of September 1, 1948, 28 U.S.C.A. § 1 et seq.

9. The fact that a criminal trial may be lawful despite the fact that the defendant was taken on an invalid warrant of arrest, as analogized in the majority opinion, seems inapt here. The trial in a criminal case is on an indictment or information whereby, if conviction results, the defendant may be deprived of his liberty. It is the indictment or information that informs the defendant of the charges and what he shall be expected to meet. In a revocation of parole it is the warrant of arrest that deprives him of his liberty and that should acquaint him of the thing with which he is charged.

10. Neither newspapers, sub-committees, political repercussions, whims, or capriciousness, singly or collectively, without more, justifies the incarceration or re-incarceration of an individual longer than it is reasonably necessary to afford him a full and fair hearing on charges adduced against him.

11. Notwithstanding the pronouncement of the Board to the sub-committee that it, like Pilate, found no fault in the parolees since their release, and notwithstanding the refusal of the Board members to answer interrogatories or to divulge, either to the parolees or to the lower Court, any reliable information as to any violation of parole, these men have been cast back into custody from which no relief can come if the Board is above the law.

The facts, as found by the Court below, are without any contradiction in the evidence and I think that its judgment should be affirmed.

On Motion for Rehearing.

PER CURIAM.

The opinion of the court seems to be inaccurate in stating that no member of the present Parole Board was such when the paroles were granted, Member Monkiewicz appearing to have continued as such throughout; and in stating that each prisoner was given written notice at the time of his arrest of the charges of parole violation made against him, the fact being that the written charges were formulated then, and it not appearing when they were made known to the prisoners. Each knew them on Sept. 2, 1948, six days before the hearing before the Board, and each alleged them fully in the applications then filed for habeas corpus. These inaccuracies are immaterial to the decision made.

Since neither judge who concurred in the judgment desires a rehearing, the motion therefor in the above named and numbered case is denied.

WALLER, Circuit Judge (concurring in the result).

I adhere to my original dissent but agree that under our Rule 29 the motion for rehearing should be denied.