George H. HOCK, Jr., Petitioner

v.

Charles R. HAGAN, Warden, United
States Penitentiary, Lewisburg,
Pennsylvania, Respondent.

No. 363.

United States District Court
M. D. Pennsylvania.

March 25, 1960.

George H. Hock, Jr., pro se.

Daniel H. Jenkins, U. S. Atty., William
D. Morgan, Asst. U. S. Atty., Scranton,
Pa., for respondent.

FOLLMER, District Judge.

Petitioner, a prisoner at the United
States Penitentiary, Lewisburg, Penn-
sylvania, has pending an application in
forma pauperis for a writ of habeas cor-
pus. He bases his application on three
contentions, which will be considered sep-
arately.

His first contention is that he
had completed the service of all his sen-
tence on January 1, 1960, and was eligible
for release on that date. He was sen-
tenced to a term of two years on Febru-
ary 26, 1948, and was paroled on Novem-
ber 11, 1948, with 471 days unserved.
While thus on parole he received a nine
months sentence in the United States
District Court for the Eastern District of
New York, and upon his release there-
under on January 11, 1950, he was re-
committed as a parole violator on the
unserved balance of 471 days under the
1948 two year sentence. He was again
conditionally released on parole on Janu-
ary 8, 1951 with 108 days of the 1948 two
year sentence remaining unserved. On
March 25, 1952, he received a new sen-
tence in the Eastern District of Pennsyl-
vania to a term of five years and a com-
mitted $1,000 fine. He received his good
time release thereunder (under the im-
prisonment portion of the sentence) on
September 30, 1955, with 541 days re-
maining unserved thereon. He was im-
mediately recommitted, as of September
20, 1955, as a parole violator to serve the
108 days remaining on the 1948 two year
sentence and upon the termination there-
of, on December 2, 1955, was recommit-
ted because of the $1,000 committed fine
in the 1952 sentence. Having taken the
indigent prisoner's oath under 18 U.S.C.
§ 3569 (formerly 18 U.S.C. § 641), he was
released on January 1, 1956. At this
point he was on parole on the 541 days
remaining to be served under the five
year sentence of 1952. On April 20, 1956,
based upon charges of "Loss of Contact
and Failure to Maintain Employment", a
Parole Violation Warrant issued with
reference to the unserved 541 days. Sub-
sequent thereto he was charged with and
convicted of a crime in the Eastern Dis-
trict of New York and sentenced to a
term of three and one-half years com-
mencing on May 9, 1957. On November
10, 1959, he was eligible for conditional
release under this sentence and began the
service of the 541 days as to which the

Parole Violation Warrant had been lodged. Requiring the service of the unexpired 541 day portion of the previous sentence after release under the three and one-half year sentence of 1957 was within the power of the Parole Board.[1] He is now serving the 541 days and is not yet eligible for release.

His second contention is that of mental incompetency at the time of the alleged parole violations, which would have been subsequent to his release from the Penitentiary on January 1, 1956, and the issuance of the Parole Violation Warrant in April 1956. There is absolutely no basis for suspecting any such condition up to the time of his release January 1, 1956. He was subsequently arrested in New York after the issuance of the Parole Violation Warrant, but not pursuant to such warrant. After such arrest and during imprisonment he was examined at Bellevue Hospital, New York City, and transferred to Kings Park State Hospital in August 1956. He was subsequently discharged with a finding that "This patient was primarily a psychopathic personality in whom a schizophrenic paranoia had developed while he was in jail, and he has since recovered from his psychotic episode." Even if we accept this finding, there is nothing to justify any belief that Hock was incompetent prior to his arrest and during the period covered by his parole violations. Moreover, the evidence before me at this hearing, including that of a competent psychiatrist, established to my complete satisfaction that he was malingering at the time of his so-called psychotic episode, and actually was never suffering any incompetency affecting his responsibility for his conduct throughout the entire period from 1948 to the present time, and I so find.

His third contention is that he asked whether he could have counsel present at his parole revocation hearing and was told by the Parole Board representative that "there would be no counsel at the hearing in this institution."

The matter of the right to be represented by counsel at Parole Board revocation hearings was brought into focus in Fleming v. Tate, 1946, 81 U.S.App. D.C. 205, 156 F.2d 848, 849. That case held that under the old District of Columbia parole statute (24 D.C.Code 206) the language "he 'shall be given an opportunity to appear before the said Board'" meant that a parole violator had the right to be represented by counsel in his appearance before the Board. This holding was subsequently, to wit, July 17, 1947, codified in the District of Columbia Code, 61 Stat. 379, 24 D.C.Code, § 206, in pertinent part as follows:

"Sec. 6. When a prisoner has been retaken upon a warrant issued by the Board of Parole, he shall be given an opportunity to appear before the Board, a member thereof, or an examiner designated by the Board. At such hearing he may be represented by counsel. * * *"

The pertinent Federal statute, 18 U.S.C. § 4207, June 25, 1948, provides, in part, as follows:

"A prisoner retaken upon a warrant issued by the Board of Parole, shall be given an opportunity to appear before the Board, a member thereof, or an examiner designated by the Board.

"The Board may then, or at any time in its discretion, revoke the order of parole and terminate such parole or modify the terms and conditions thereof."

In Moore v. Reid, 1957, 100 U.S.App. D.C. 373, 246 F.2d 654, the Court of Appeals for the District of Columbia expanded its opinion in Fleming by holding that the prisoner does not waive this statutory privilege to appear with counsel and to present testimony when he is not advised that he has it.

It will be noted that the Federal statute quoted above was enacted approximately one year after the above-cited codification of the District of Columbia Code.

1. Zerbst v. Kidwell, 304 U.S. 359, 58 S.Ct. 872, 82 L.Ed. 1399.

The provisions of the old District of Columbia Code and the old Federal statute with relation to revocation hearings were substantially the same from 1932 until the Fleming case in 1946. Then with relation to the District of Columbia statute there followed the codification of its Code in 1947, and then the Moore case. The codification of the District of Columbia Code in 1947 and the amendment to the Federal statute in 1948 were in pari materia with the exception that the District of Columbia statute had this additional phrase, "at such hearing he may be represented by counsel". Over a period in excess of fifty years[2] the operation of the parole procedure under the two statutes developed marked disparities,[3] of which the matter of "personal representation" is one. It is inconceivable to believe that this difference is merely accidental or unintentional.

The distinction between the District of Columbia statute involved in Fleming and the Federal statute was recognized in Hiatt v. Compagna, 5 Cir., 1949, 178 F.2d 42, 46, affirmed by an equally divided Court in 340 U.S. 880, 71 S.Ct. 192, 95 L.Ed. 639, as follows:

"* * * Congress, in revising the parole law, Revised Title 18, Sec. 4207, changed the wording to read: 'A prisoner retaken upon a warrant issued by the Board of Parole, shall be given an opportunity to appear before the Board, a member thereof or an examiner designated by the Board.' This change cuts deeply into the idea that the appearance is to be a trial. An examiner may conduct it now, and it would seem that the taking of the testimony of the prisoner, and perhaps his witnesses, is alone contemplated. * * *"

The court in Fleming, supra, said: "The question is one of statutory construction. No constitutional right is involved, as parole is a matter of grace."

In failing to make statutory provision giving a right of counsel under the Federal statute one year after providing for such right in the District statute would seem to be a clear indication of its deliberate intention to provide different procedures for parole violators subject to the Federal statute. That the administrative practice for fifty years (since 1910) has been not to provide counsel at revocation hearings must have been in the thinking of Congress. A revocation hearing is not a trial, nor indeed is it primarily concerned with the commission of an offense. As a matter of fact, a prisoner having been granted his conditional freedom on parole, the sole question before the Board, the determination of which may be delegated to a single member or even an examiner, is whether the parolee, in the judgment of the Board, is still a good parole risk. That determination presupposes an informal type of conference far removed from the technical ritual of a trial.

The pros and cons of this question with relation to the Federal statute were presented in bold relief in July, 1959 in two extremely able opinions reaching diametrically opposite conclusions.

In Robbins v. Reed, D.C.Cir., 269 F.2d 242, 244, the court said:

"The present complaint, fairly construed, indicates the absence of counsel, no advice of appellant's right thereto, and no waiver of the right to appear with counsel and to present testimony. Accordingly, we think the complaint makes out a case which, if sustained by evidence, would undermine the validity of the parole revocation."

In Lopez v. Madigan, D.C.N.D.Cal. 1959, 174 F.Supp. 919, 921–922, the court said:

"Hearings before the Board are not adversary proceedings. They are informal, unsworn, and not bound by the rules of evidence. Christianson v. Zerbst, 10 Cir., 1937, 89 F.2d 40. Their purpose is as

**2.** Federal statute, Act of June 25, 1910, c. 387, 36 Stat. 820.

**3.** See Lopez v. Madigan, D.C.N.D.Cal., 1959, 174 F.Supp. 919.

752

much to form a part of the rehabilitation process as to provide a check on the administrative decision, already tentatively made, that the conditions of release were violated. See Attorney General's Survey of Release Procedures (1939) Vol. IV, pp. 246–247, cited in Fleming v. Tate, 1946, 81 U.S.App.D.C. 205, 156 F.2d 848, 851. The position of the parole authorities, therefore has consistently been that attorneys do not belong at revocation hearings and that the statute does not authorize their presence. * * *

* * * * * *

" * * * The Court finds that the denial of counsel at the revocation hearing—if, in fact, such a denial was made—did not invalidate those proceedings."

The United States Penitentiary at Lewisburg, Pennsylvania, being located in this District creates an awareness of the administrative problems involved. While not dealing with this precise issue, the court in Stroud v. Swope, 9 Cir., 187 F.2d 850, 852, made a statement which graphically pin points a practical side to this question which cannot be entirely overlooked, to wit:

"Aside from the purely legal aspects of this case very practical considerations militate against granting to appellant the relief for which he prays for to do so would open the door to a flood of applications from federal prisoners which would seriously hamper the administration of our prison system."

I am fully aware that the mere difficulty in handling this problem, if the rule of Robbins v. Reed, supra, is to prevail, is not and probably should not be the determinative factor here. I do feel, however, if the procedure followed without exception for fifty years is to be thrown into the discard, it should be done by Congressional and not judicial legislation at which time the act could be implemented in a way to make it possible of accomplishment, which at the present time I do not think it is.

As previously indicated, petitioner states in his petition that he was advised by the Parole Board representative that "there would be no counsel at the hearing in this institution." The Government frankly conceded that it was the settled policy of the Parole Board not to advise parolees of any right to counsel at revocation hearings, that on the contrary had a request for presence of counsel been made it would have been refused.

I find that the denial of counsel at the revocation hearing, if, in fact, such a denial was made, did not invalidate these proceedings.