Gary Glen POOLE, Petitioner,

v.

L. B. STEVENS, Warden, et al., Respondents.

No. 20294.

United States District Court
E. D. Michigan, S. D.

Aug. 22, 1960.

---

Gary Glen Poole in pro. per.

George E. Woods, U. S. Atty., and John L. Owen, Asst. U. S. Atty., Detroit, Mich., for respondents.

FREEMAN, District Judge.

This is a petition for a writ of habeas corpus filed July 12, 1960, by Gary Glen Poole, who is presently serving a three-year sentence in the Federal Correctional Institution at Milan, Michigan.

Pursuant to an order to show cause, respondent filed an answer on July 27, 1960. From the petition and the answer, it appears that petitioner was sentenced on February 11, 1958. On March 24, 1959, he was released on parole, but on January 19, 1960, a parole violator warrant was executed. Petitioner was then interviewed by a member of the parole board at the January, 1960, session, resulting in his parole revocation on March 10, 1960.

It is petitioner's contention that this parole violation hearing was irregular and in violation of the statute providing for such hearing in that petitioner was not given the opportunity to have counsel and witnesses present at such hearing.

█ It must be recognized at the outset that the issue raised by petitioner is not of a constitutional nature, but is squarely one of statutory interpretation. Fleming v. Tate, 1946, 81 U.S.App. D.C. 205, 156 F.2d 848; Hock v. Hagan, D.C.Pa., 190 F.Supp. 749.

The relevant statute, 18 U.S.C. § 4207, provides, in pertinent part:

"A prisoner retaken upon a warrant issued by the Board of Parole, shall be given an opportunity to appear before the Board, a member thereof, or an examiner designated by the Board.

"The Board may then, or at any time in its discretion, revoke the order of parole and terminate such parole or modify the terms and conditions thereof."

The precise inquiry before the court goes to the meaning of the term "opportunity to appear." Although never interpreted by the Court of Appeals for this circuit, this term has hertofore been given diametrically opposed meanings by the Court of Appeals for the District of Columbia and the District Court for the Northern District of California in two opinions handed down on the same day, July 2, 1959. In Robbins v. Reed, 106 U.S.App.D.C. 51, 269 F.2d 242, 243, the Court of Appeals, District of Columbia, held that "opportunity to appear" includes the opportunity to have counsel present. In Lopez v. Madigan, 174 F. Supp. 919, on the other hand, Judge Carter of the District Court for the Northern District of California concluded that that term does not include such opportunity to have counsel present. These cases were subsequently considered by Judge Follmer, District Judge for the Middle District of Pennsylvania, in Hock v. Hagan, 190 F.Supp. 749, and Judge Thornton in this district in Cannon v. Stucker, D.C., Civil 19822, June, 1960 not reported. Judge Follmer in the Hock case followed the Lopez case, while Judge Thornton in Cannon followed the Robbins case.

█ Although this court is not bound to follow any of these cases, the court notes that all the opinions are well reasoned and persuasive.

In attempting to analyze these cases as applied to the issue before this court, it appears desirable to refer to them in historical perspective.

It appears that the forerunner of the federal statute, 18 U.S.C. § 4207, was passed in 1910. An almost identical statute providing for an "opportunity to appear" was in existence in the District of Columbia. For over thirty years, it appears to have been assumed that the critical term "opportunity to appear" did not

include the right to counsel at a revocation hearing.

In 1946, the Court of Appeals for the District of Columbia was asked to interpret the District of Columbia statute, 24 D.C.Code § 206, in the case of Fleming v. Tate, 156 F.2d 848. In that case, the petitioner had been convicted in 1927 on charges of housebreaking and larceny. He was sentenced to forty years' imprisonment, but was paroled after sixteen years, leaving twenty-four years of the sentence unserved. Two years later, petitioner's parole was revoked at a hearing without counsel on the basis of the alleged parole violation that petitioner went to Virginia to attend the funeral of his sister apparently without having obtained the permission of his official parole officer, but with the alleged permission of his parole-sponsor. The Parole Board informed petitioner at the hearing that the parole-sponsor had no authority to give such permission and revoked the parole on the basis of failure to get permission from the proper party. In affirming the granting of a writ of habeas corpus, the Court of Appeals approved the conclusion of the District Judge that the term "opportunity to appear" in the local statute means "an effective appearance, and thus necessarily means the presence of counsel if the prisoner so elects, and the receipt of testimony if he has testimony to present." 156 F.2d 848, 849.

As pointed out in Judge Follmer's able opinion in Hock v. Hagan, supra, Congress codified the Fleming case in 1947 by amending the District of Columbia statute, 24 D.C.Code § 206 to the effect that:

> "At such hearing he may be represented by counsel."

Approximately one year after such codification, Congress amended the federal statute, 18 U.S.C. § 4207, *without*, however, adding the last cited sentence to such federal statute.

This was the status of the District of Columbia and federal parole revocation statutes when, in 1959, the Court of Appeals for the District of Columbia was called upon to interpret the federal statute in Robbins v. Reed, 269 F.2d 242. Since the critical language in the federal statute is identical to that of the local statute before amendment, the court extended the interpretation in the Fleming case to the federal statute simply by referring to such Fleming case.

In March, 1960, Judge Follmer of the Middle District of Pennsylvania was then confronted by the same problem of interpretation, having the benefit of the Fleming case, as well as the Lopez case in California. Hock v. Hagan, supra. And, as has already been pointed out, Judge Follmer decided to follow the Lopez case, writing a persuasive opinion in support of his decision.

Going to the heart of the problem, it appears to this court that the basic issue is one of determining the intent of Congress. The answer to this problem was convincingly stated by Judge Follmer in the Hock case, supra [190 F.Supp. 751]:

> "The provisions of the old District of Columbia Code and the old Federal statute with relation to revocation hearings were substantially the same from 1932 until the Fleming case in 1946. Then with relation to the District of Columbia statute there followed the codification of its Code in 1947, and then the Moore case. The codification of the District of Columbia Code in 1947 and the amendment to the Federal statute in 1948 were in pari materia with the exception that the District of Columbia statute had this additional phrase, 'at such hearing he may be represented by counsel.' Over a period in excess of fifty years [Federal statute, Act of June 25, 1910, c. 387, 36 Stat. 820] the operation of the parole procedure under the two statutes developed marked disparities (See Lopez v. Madigan, D.C.N.D.Calif.1959, 174 F.Supp. 919), of which the matter of 'personal representation' is one. It is inconceivable to believe that

this difference is merely accidental or unintentional."

"In failing to make statutory provision giving a right of counsel under the Federal statute one year after providing for such right in the District statute would seem to be a clear indication of its deliberate intention to provide different procedures for parole violators subject to the Federal statute. That the administrative practice for fifty years (since 1910) has been not to provide counsel at revocation hearings must have been in the thinking of Congress. A revocation hearing is not a trial, nor indeed is it primarily concerned with the commission of an offense. As a matter of fact, a prisoner having been granted his conditional freedom on parole, the sole question before the Board, the determination of which may be delegated to a single member or even an examiner, is whether the parolee, in the judgment of the Board, is still a good parole risk. That determination presupposes an informal type of conference far removed from the technical ritual of a trial."

■ Not only is parole purely a matter of grace (see Fleming v. Tate, supra), but a parolee, while on parole, also actually remains in the legal custody and under the control of the Attorney General and is otherwise subject to the discretionary power of the parole board even while physically outside the prison, pursuant to 18 U.S.C. § 4203:

"If it appears to the Board of Parole from a report by the proper institutional officers or upon application by a prisoner eligible for release on parole, that there is a reasonable probability that such prisoner will live and remain at liberty without violating the laws, and if in the opinion of the Board such release is not incompatible with the welfare of society, the Board may in its discretion authorize the release of such prisoner on parole.

"Such parolee shall be allowed in the discretion of the Board, to return to his home, or to go elsewhere, upon such terms and conditions, including personal reports from such paroled person, as the Board shall prescribe, and to remain, while on parole, in the legal custody and under the control of the Attorney General, until the expiration of the maximum term or terms for which he was sentenced.

"Each order of parole shall fix the limits of the parolee's residence which may be changed in the discretion of the Board."

As stated by the United States Supreme Court in Anderson v. Corall, 263 U.S. 193, 196, 44 S.Ct. 43, 44, 68 L.Ed. 247:

"The parole authorized by the statute does not suspend service or operate to shorten the term. While on parole the convict is bound to remain in the legal custody and under the control of the warden until the expiration of the term, less allowance, if any, for good conduct. While this is an amelioration of punishment, it is in legal effect imprisonment."

■ In view of the strong indications of congressional intent and the absence of any compelling reason to so greatly expand the scope of the ordinary, common meaning of "opportunity to appear," this court concludes that the right to counsel and witnesses at a parole violation hearing is not encompassed by this language and that, if such right is intended to be given to alleged parole violators, it must come by appropriate congressional action rather than by judicial legislation.

With due respect to the opinions of the Court of Appeals for the District of Columbia in the Fleming and Robbins cases, supra, and the opinion of Judge Thornton of this District in the Cannon case, supra, this court concludes that in accord with the foregoing the petition for writ of habeas corpus in the present case must be and hereby is denied.