No. 45,530

Jack D. Johnson, *Appellant* v. Nova F. Stucker, Superintendent of the Kansas State Industrial Reformatory, *Appellee*.

(453 P. 2d 35)

Opinion filed April 12, 1969.

*Dennis O. Smith,* of Hutchinson, argued the cause, and *Frank S. Hodge, H. Newlin Reynolds, Kenneth E. Peirce,* and *Dan W. Forker, Jr.,* of Hutchinson, were with him on the brief for the appellant.

*Raymond F. Berkley,* county attorney, argued the cause, and *Kent Frizzell,*

attorney general, and *Kerry J. Granger*, assistant county attorney, were with him on the brief for the appellee.

*Kent Frizzell*, attorney general, and *Edward G. Collister, Jr.*, assistant attorney general, were on the brief for *amicus curiae* state board of probation and parole.

The opinion of the court was delivered by

O'CONNOR, J.: Jack D. Johnson filed a petition in Reno county district court for writ of habeas corpus and release from imprisonment in the state reformatory as a result of revocation of his parole by the state board of probation and parole. The writ was duly issued, and after a hearing the court rendered judgment dissolving the writ and ordering the petitioner remanded to the custody of the respondent. From this judgment and the district court's subsequent order denying his motion for new trial, Johnson has appealed.

The principal questions for our consideration center on the board's denial of the petitioner's request to have counsel present at the revocation hearing, and the propriety of the district court's determination that petitioner had failed to show the action of the board in revoking his parole was arbitrary and capricious.

Johnson was originally convicted in September 1964 of second degree burglary and grand larceny and sentenced to the reformatory. After being incarcerated pursuant to the sentence, he was placed on parole by the state board on August 16, 1966, and permitted to return to his home in Story City, Iowa.

In June 1967 Johnson was arrested on a parole violator warrant issued by the state board and returned to the reformatory. Shortly thereafter he was served a statement of charges alleging that he had violated the conditions of his parole in that (1) he failed to keep regularly employed, (2) he failed to cooperate with the parole officer's efforts to assist him, and (3) he was found guilty by jury trial in Iowa of breaking and entering, although the verdict "was set aside on a legal technicality." The statement of charges also recited that at the earliest practicable date the board would give Johnson a hearing on the charges and would consider all available information, including any oral or written statements he desired to submit.

The revocation hearing was held July 25, 1967. Although Johnson had retained Mr. Dennis Smith as his counsel, the board denied Johnson's request to have his attorney present at the hearing. By

letter dated July 26, Mr. Smith was informed that after giving consideration to the case and "taking into account the information contained in your [Mr. Smith's] letter of July 25, and attachments thereto," the board had entered an order revoking Johnson's parole.

In due course, Johnson, through his attorney, filed a habeas corpus petition alleging, *inter alia,* that he had at all times complied with the terms and conditions of his parole; that although he was arrested for breaking and entering in Story City, Iowa, the information was subsequently dismissed and he was discharged and exonerated of any implication in the crime; that the board in revoking his parole exceeded its statutory power and acted capriciously and in the absence of any information which would entitle it to revoke his parole; and that he was denied the presence of counsel at his revocation hearing, in violation of his constitutional rights. Attached to the petition were the statement of charges and the board's letter to Mr. Smith, to which reference has already been made.

At the habeas hearing, the petitioner, his mother and girl friend testified in support of his allegations. The respondent offered no evidence. Subsequently, the district judge filed a lengthy memorandum opinion in which he concluded that the board's refusal to permit retained counsel to be present at the revocation hearing was not a denial of due process of law, and that the petitioner had failed to sustain the burden of showing the action of the board in revoking his parole was arbitrary or capricious.

We shall first consider petitioner's claim that denial of the presence of counsel was a violation of the constitutional requirement of due process of law.

The United States Supreme Court has made it clear that an accused's Sixth Amendment right to the assistance of counsel not only applies to federal prosecutions but also is made obligatory upon the states by the Fourteenth Amendment. (*Gideon v. Wainwright,* 372 U. S. 335, 9 L. Ed. 2d 799, 83 S. Ct. 792, 93 A. L. R. 2d 733; *Escobedo v. Illinois,* 378 U. S. 478, 12 L. Ed. 2d 977, 84 S. Ct. 1758; *Pointer v. Texas,* 380 U. S. 400, 13 L. Ed. 2d 923, 85 S. Ct. 1065.) The right to counsel in felony cases has been held to exist not only at "critical" pretrial stages, such as custodial interrogations by law enforcement officers (*Escobedo v. Illinois,* supra; *Miranda v. Arizona,* 384 U. S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A. L. R. 3d 974 rehearing denied, 385 U. S. 890, 17 L. Ed. 2d 121, 87 S. Ct.

11) and out-of-court identifications of suspects at police lineups (*United States v. Wade,* 388 U. S. 218, 18 L. Ed. 2d 1149, 87 S. Ct. 1926; *Gilbert v. California,* 388 U. S. 263, 18 L. Ed. 2d 1178, 87 S. Ct. 1951), but also at the trial itself (*Gideon v. Wainwright,* supra). In addition, the accused's right to counsel on appeal from a state court conviction was upheld in *Swenson v. Bosler,* 386 U. S. 258, 18 L. Ed. 2d 33, 87 S. Ct. 996, and *Anders v. California,* 386 U. S. 738, 18 L. Ed. 2d 493, 87 S. Ct. 1396, rehearing denied, 388 U. S. 924, 18 L. Ed. 2d 1377, 87 S. Ct. 2094.

In 1948 the high court concluded that the absence of counsel during sentencing after a plea of guilty, coupled with "assumptions concerning his criminal record which were materially untrue," deprived the accused of due process. (*Townsend v. Burke,* 334 U. S. 736, 92 L. Ed. 1690, 68 S. Ct. 1252.) In one of its most recent pronouncements on the subject, *Mempa v. Rhay,* 389 U. S. 128, 19 L. Ed. 2d 336, 88 S. Ct. 254, the court held the right extended to the time of sentencing where sentencing had been *deferred subject to probation.* In reaching its decision, the court observed that *Townsend* illustrates the critical nature of sentencing in a criminal case and "might well be considered to support by itself a holding that the right to counsel applies at sentencing."

We do not interpret or construe *Mempa* as extending the constitutional requirement of counsel to parole revocation hearings before the state board of probation and parole. The *Mempa* decision concerned a deferred-sentencing situation, whereas here, sentence had been imposed and the petitioner confined pursuant thereto. The adversary system had been terminated and the correctional and rehabilitative processes of the parole system substituted in its place. Thus, we are no longer concerned with the matter of sentencing or the procedures connected therewith. (*Williams v. Patterson,* 389 F. 2d 374 [10th Cir. 1968]; *Eason v. Dickson,* 390 F. 2d 585 [9th Cir. 1968]; *Rose v. Haskins,* 388 F. 2d 91 [6th Cir. 1968].) A hearing before the parole board is a nonadversary proceeding, and as described in *Washington v. Hagan,* 287 F. 2d 332 (3d Cir. 1960), cert. denied, 366 U. S. 970, 6 L. Ed. 2d 1259, 81 S. Ct. 1934:

"The period of contentious litigation is over when a man accused of crime is tried, defended, sentenced and, if he wishes, has gone through the process of appeal. Now the problem becomes one of an attempt at rehabilitation. The progress of that attempt must be measured, not by legal rules, but by the judgment of those who make it their professional business. So long as that judgment is fairly and honestly exercised we think there is no place for lawyer

representation and lawyer opposition in the matter of revocation of parole." (p. 334.)

Parole from confinement in a penal institution prior to serving all of an imposed sentence is a privilege, a matter of grace, and no constitutional right is involved. (*Jones v. Rivers*, 338 F. 2d 862 [4th Cir. 1964].) The courts generally have held there is no federally protected constitutional right to counsel at a parole revocation hearing, and that any such right depends entirely upon the existence of statutory provisions. (*Dunn v. California Department of Corrections*, 401 F. 2d 340 [9th Cir. 1968]; *Williams v. Patterson*, supra; *Gonzales v. Patterson*, 370 F. 2d 94 [10th Cir. 1966]; *Lavendera v. Taylor*, 234 F. Supp. 703, affirmed 347 F. 2d 989 [10th Cir. 1965]; *Jones v. Rivers*, supra; *Hyser v. Reed*, 318 F. 2d 225 [D. C. Cir. 1963], cert. denied, 375 U. S. 957 [1963]; *Fleming v. Tate*, 156 F. 2d 848 [D. C. Cir. 1946]. Also, see *Escoe v. Zerbst*, 295 U. S. 490, 79 L. Ed. 1566, 55 S. Ct. 818.)

Petitioner's right to the presence of counsel at his revocation hearing arises, if at all, from the provisions of K. S. A. 62-2226, *et seq*. The act authorizes the board of probation and parole to adopt such rules, not inconsistent with the statutes, as it deems proper or necessary with respect to parole eligibility, the conduct of parole hearings, and conditions to be imposed upon the parolee. (K. S. A. 62-2245.) Such rules appear to be exempt from publication in the Kansas Administrative Regulations by the revisor of statutes (K. S. A. 1965 Supp. 77-415 [4]). We, nevertheless, have obtained a copy of the rules and regulations which, we understand, have been promulgated by the board and became effective July 1, 1966.

K. S. A. 62-2250 requires that a parolee accused of violation of any of the conditions of his release be brought before the board for "a hearing on the violation charged under such rules and regulations as the board may adopt." 45-1-7 (*b*) of the board's regulations provides that a statement of charges of parole violation shall be delivered to the prisoner to permit him to prepare his defense before appearing at the violator hearing.

Before granting a parole in the first instance, the board must have the prisoner appear before it and interview him (K. S. A. 62-2245). Likewise, his appearance is guaranteed at the revocation hearing (K. S. A. 62-2250). While the board is empowered to issue subpoenas requiring the presence of witnesses (K. S. A. 62-2249), it is not required to hear statements or arguments by any person

not connected with the correctional system (K. S. A. 62-2248). In fact, the latter statute explicitly says that all persons not connected with the correctional system presenting information or arguments to the board shall submit their statements in writing, and further, shall submit therewith an affidavit stating whether any fee has been paid or is to be paid for their services, and that the amount of any fee for their services in the case was not or is not to be determined on the basis of the granting or denial of parole. This statute, we believe, was intended to apply not only to the hearing when a parole is granted, but also to a revocation hearing.

Careful scrutiny of the foregoing statutes leads us to the conclusion the legislature did not contemplate that a parolee is entitled to have counsel present and appear with him as a matter of right at a revocation hearing. This is not to say that the prisoner is precluded from employing and being represented by counsel; but having done so, counsel's arguments and statements in his client's behalf must be submitted in writing for the board's consideration, together with the affidavit required by K. S. A. 62-2248. Furthermore, our conclusion is unaffected by K. S. A. 62-2250, requiring "the prisoner be brought before the board for a hearing on the violation charged." A similar statute affording the prisoner charged with parole violation the "opportunity to appear" was held not to embrace the right to assistance of counsel. (*Washington v. Hagan,* supra.) There, the petitioner did not have counsel, nor was he advised that he had the right to counsel. After emphasizing that it has been the practice for more than fifty years to allow a prisoner a hearing, but not representation by counsel, the court said:

". . . We think the practice is right because this matter of whether a prisoner is a good risk for release on parole or has shown himself not to be a good risk, is a disciplinary matter which by its very nature should be left in hands of those charged with the responsibility for deciding the question. . . ." (p. 334.)

Under statutes similar to those of Kansas, the supreme court of New Mexico had before it the question of a parolee's right to counsel at a revocation hearing in *Robinson v. Cox,* 77 N. M. 55, 419 P. 2d 253. The court's conclusion is reflected in the following language:

"We reject the contention that a right to counsel at a revocation hearing springs from the due process requirements. In so doing, we must reject the argument that either the board's rules or § 41-17-27, supra, are unconstitutional as thus construed. Escoe v. Zerbst, supra; Jones v. Rivers, supra . . .

[N]either due process nor the applicable statutes require that parolees be provided with appointed counsel or represented by employed counsel when they appear before the parole board in a revocation hearing. See 29 A. L. R. 2d 1074, 1097." (p. 59.)

We hold that the board's refusal to permit petitioner's counsel to be present at the revocation hearing was not a denial of due process, nor was the refusal a violation of any statutory enactment governing such proceedings.

Before taking up petitioner's other points which relate to the merits of the district court's decision, we should briefly mention respondent's contention at oral argument that habeas corpus is an improper remedy for testing the action of the parole board.

Respondent urges that habeas lies only to "attack the validity of custody," and here, even if petitioner's allegations were found to be meritorious, he would still remain in "legal custody" under his original sentence, which is not being challenged. K. S. A. 60-1501 explicitly offers the aid of the Great Writ to any person "who is restrained from his liberty." While it is true that a paroled prisoner is one conditionally released from actual custody, he remains in "legal custody" of the institution from which he is released, and constructively is a prisoner of the state. (K. S. A. 62-2245; *Hunt v. Hand,* 186 Kan. 670, 352 P. 2d 1; *In re Tabor,* 173 Kan. 686, 250 P. 2d 793. Also, see *Baier v. State,* 197 Kan. 602, 419 P. 2d 865.) Upon a parolee's arrest and confinement as a parole violator, however, constructive custody changes to physical custody or actual imprisonment. Thus, if a prisoner is entitled to be restored to the status of a constructive prisoner of the state, he, in fact, is being unlawfully restrained of his liberty, and may resort to the remedy of habeas corpus. (*Schooley v. Wilson,* 150 Colo. 483, 374 P. 2d 353.) We are unable to accept respondent's further argument that judicial review of a revocation order of the board of probation and parole must be by proceedings under K. S. A. 60-2101 (*a*) instead of by the habeas route. In our view, the appellate procedure for review of the acts of administrative officials or boards provided by that statute was never intended to cover actions of the parole board in revoking a parole. Because the very nature of the board's action in revoking a parole involves the "liberty" of the prisoner, habeas is an appropriate remedy to review the board's decision.

But the extent of judicial review with respect to a determination by the board that parole be revoked is extremely narrow and limited. Our statute (K. S. A. 62-2232) specifically provides the orders

of the board "shall not be reviewable except as to compliance with the terms of this act or other applicable laws of this state." This we interpret to mean that in a habeas proceeding the court may inquire into the question of whether the specific terms of the applicable statutes were complied with, and further, whether or not the board's action in revoking a parole was arbitrary and capricious.

The board, in exercising its parole powers under the law, is vested with considerable discretion. In the first instance a prisoner may be granted parole only when the board believes that he is able and willing to fulfill the obligations of a law-abiding citizen under the supervision of the board. Indeed, there is, to some extent at least, a genuine identity of interest, if not purpose, in the prisoner's desire to be released—the board's policy being to grant release as soon as possible, consistent with public safety and the prisoner's own welfare and rehabilitation. The relationship of the board and prisoner has been described as partaking of *parens patriae*. In a sense, the parole board in revoking parole occupies the role of parent withdrawing a privilege from an errant child, not as punishment but for misuse of the privilege. (See *Hyser v. Reed,* supra.)

A revocation hearing is not a trial in the traditional sense, nor is the board necessarily concerned with the commission of a criminal offense. As a matter of fact, a prisoner having been granted conditional freedom on parole, the primary question before the board is whether within its discretion the parolee is still a good parole risk. (*Hendrickson v. Pennsylvania State Board of Parole,* 409 Pa. 204, 185 A. 2d 581; *Hock v. Hagan,* 190 F. Supp. 749 [M. D. Pa. 1960].) By its very nature a revocation hearing does not envision strict observance of technical rules of law and procedure accorded to a judicial proceeding. Any relevant information, even though in the form of letters, reports of parole officers, and similar matter, which may aid the board in making its determination, may be considered. The board is presumed to have had before it information which warranted the order of revocation, and its determination of the matter is conclusive unless the prisoner can prove by a preponderance of the evidence the board's action was arbitrary and capricious. That burden rests squarely on the prisoner, and if he fails to sustain the burden, the courts will not interfere with the board's decision. (*Freedman v. Looney,* 210 F. 2d 56 [10th Cir. 1954]; *Lavendera v. Taylor,* supra; *Teague v. Looney,* 268 F. 2d 506 [10th Cir. 1959].)

Petitioner's remaining contentions relate to the district court's conclusion that he failed to sustain the burden of proving the board acted arbitrarily and capriciously. He points to the fact respondent offered no evidence to rebut his testimony and that of his two witnesses to the effect he had fully complied with the conditions of his parole. We need look only to his own testimony to show the weakness of his case. In describing the proceedings at the revocation hearing, petitioner testified the violation charges were read to him and that he told the board *"for the most part* the first two are false." (Emphasis added.) In respect to the burglary offense, the most petitioner had to offer was the judge "just acquitted me of the charge and I was exonerated." From the record, it appears petitioner never at any time contradicted the statement in the charges that he had been found guilty by a jury, although the verdict was later set aside. As previously indicated, at a revocation hearing the board is not concerned with the commission of a criminal offense in a prosecution sense. The mere fact that a parolee is arrested, charged, found guilty, but eventually exonerated, while enjoying the privilege of being at liberty on parole, may be strong indication that the parolee has lapsed in his ways to a sufficient degree to warrant the board's determining he is no longer a good parole risk. At any rate, the burden was on the petitioner to prove the action of the board was arbitrary and capricious, and this the trial court found he had failed to establish.

The finding of the district court was, in effect, a negative finding, which an appellate court will seldom set aside, even though no refuting evidence was offered. The weight and value of the testimony of witnesses is to be assessed by the trial judge who saw them and observed their manner and demeanor on the stand. Although the trial court cannot arbitrarily and capriciously refuse to consider the testimony of a witness, it is not obliged to accept and give effect to any evidence which in its honest opinion is unreliable, even if such evidence is uncontradicted. (*Collins v. Merrick,* 202 Kan. 276, 448 P. 2d 1, and cases therein cited.)

Other contentions raised by the petitioner relating to alleged procedural infirmities in respect to the habeas corpus proceedings have also been examined and found to be devoid of merit.

The judgment is affirmed.