BONOCIO ROMÁN CANCEL, Petitioner and Appellant, v. GERARDO DELGADO, WARDEN, ETC., Respondent and Appellee.

No. 12856. Submitted April 20, 1961.—Decided May 12, 1961.

*Bonocio Román Cancel* pro se. *J. B. Fernández Badillo, Attorney General of Puerto Rico,* and *Juan A. Faría, Assistant Attorney General,* for appellee.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

On June 30, 1949, the petitioner-appellant, Bonocio Román Cancel, was sentenced by the Superior Court, Bayamón Part, to serve consecutive sentences of from 15 to 20 years, 3 to 4 years and 15 to 20 years in the penitentiary. On June 19, 1957 the Governor of Puerto Rico commuted said sentences for a penalty of from 12 to 44 years in the penitentiary.[1] Parole was granted on September 18, 1958.

On July of 1959 a complaint was filed against the petitioner before the Parole Board. The complainant was heard at a preliminary hearing, without the petitioner being present, and a confidential report was made on the result of the hearing to said body. On August 31, 1959, a hearing was held before one of the members of the Board at which, evidence was introduced. The appellant was present at this hearing. A month later, another hearing was held before the Chairman of the Board, without the appearance of the accused, at which the complainant was heard once more. Finally, the full Board held another hearing on October 5, at which the appellant appeared and "was heard, he expressed and defended himself." As a result of all the foregoing proceedings, the Board decided on this last date to revoke the parole being enjoyed by the petitioner and ordered his immediate arrest and his commitment to the State Penitentiary. The arrest took place a week later.

Román Cancel filed a petition before this Court which he entitled "mandamus", alleging that he was illegally deprived of his liberty. We considered the petition as one for habeas corpus,[2] and we issued the corresponding order direct-

---

[1] The exercise of executive mercy eliminated any possible attack against said sentences on the ground of not permitting a reasonable fluctuation margin between the minimum and the maximum term. *Sánchez* v. *Angeli, Warden,* 80 P.R.R. 154 (1957); *Serrano* v. *Delgado, Warden,* 80 P.R.R. 215 (1958); dissenting opinion in *People* v. *Superior Court,* 78 P.R.R. 135 (1955).

[2] Even though the parole is a form of serving sentence outside the limits of the jail, habeas corpus is the proper proceeding to determine the

ing the defendant to appear before the Superior Court, San Juan Part. The Superior Court dismissed the petition and from this judgment an appeal was taken, charging the court with the commission of the following errors: (1) the dismissal of the petition is erroneous because it was shown that the petitioner was deprived of the opportunity of being present at the hearing in which the Parole Board heard the statements of the complainant on the facts which constitute the violation of the conditions of the parole which had been granted to him and which ultimately caused the same to be revoked; (2) in not deciding that the order of said Board revoking the parole is void because it was approved at a meeting at which only two members of said body were present; (3) in not deciding that said revocation is void because more than forty-five days had elapsed since the date the complaint was filed.

I

Section 8 of Act No. 266 of April 4, 1946 (Sess. Laws, p. 550, 4 L.P.R.A. § 608) provides that:

"The board, or any of its members, upon having knowledge of a probable violation of the parole, is hereby authorized to order the arrest of any parolee and his confinement in the institution where he was released from; and said order shall be executed by any officer of the board or any officer or peace officer, as in the case of a judicial order.

"The writ of commitment referred to in the preceding paragraph shall authorize the officers to whom it is addressed to confine the prisoner under effective custody in the proper penal

validity of reincarceration when the parole is revoked, as evidently the prisoner is being physically deprived of his liberty. In *Emanuelli* v. *District Court*, 74 P.R.R. 506, 514 (1953), we decided that a null action by the Board, granting a parole, has no legal effect and may be judicially reviewed by the State by a petition for an order of incarceration. In *Garay* v. *Parole Board*, 74 P.R.R. 524 (1953), we had already established that mandamus is the adequate procedure to obtain from the Board a decision as to whether it grants or denies the parole. On the propriety of habeas corpus in cases of revocation of paroles, see in general 39 C.J.S. Habeas Corpus, § 26(d), pp. 495 *et seq.*

institution. Until the hearing on the alleged violation of the parole, as hereinafter authorized, is held, the prisoner shall remain confined in said institution; *Provided,* That the board shall, within forty-five (45) days counting from the date of the arrest of the parolee, hold a hearing at which said parolee shall have the right to be heard in his defense, so as to decide on the alleged violation of the parole and determine whether or not the revocation of said parole is in order, and to direct the final commitment of the parolee for the unextinguished part of his sentence; *Provided, further,* That if the board does not hold said hearing within the term fixed in this Act, the alleged violation of the parole shall be considered as not committed, and the parolee shall have the right to be released immediately upon an order for the purpose issued by the chairman of the board or by the person acting in his stead; *Provided, further,* That if it appears that any prisoner for whose recommitment in the penitentiary the board has issued a writ, has violated the terms of his parole, the period included between the issuance of said writ and the date of his arrest, shall not be credited to him as a part of the sentence imposed on him.

"The board shall promulgate such rules and regulations as it may deem advisable for the proper enforcement of the provision of this section."

An examination of this provision reveals that: (*a*) to order the arrest and commitment of a prisoner on parole, it is sufficient that the Board or any of its members so provides upon "having knowledge" of a probable violation of the conditions of the parole without it being necessary to hear the prisoner before ordering his arrest; (*b*) within forty-five days after his arrest, a hearing must be held to decide on the alleged violation and determine whether or not said revocation lies, at which the prisoner *shall have the right to be heard in his defense.*

The Parole Board Regulation effective as of November 29, 1946, provides that (4 R. & R. P. R. § 613–2(*b*) (13)):

"When a person who is at liberty on parole observes bad conduct or infringes the regulations governing his activities, and the Board is informed thereof, the arrest and provisional

imprisonment of such person shall be ordered until the result of an investigation of such facts which may be ordered makes possible a determination of the appropriate action to be taken. The facts having been investigated and the corresponding report submitted, the Board, within forty-five (45) days counting from the day when the provisional imprisonment began, shall hold a hearing to give the confinee an opportunity to be heard in his defense. After the hearing has been held, the Board will decide whether or not to revoke the privilege of parole.

"The Board, or any of its members, may, at any time, order an investigation of the activities of any person or persons on parole and their provisional arrest, if such should be essential to the good progress and the necessary efficiency of the parole system."

It is inferred from the foregoing that when a complaint is received by the Board about an alleged violation of the conditions under which the prisoner enjoys a parole, an investigation of the facts is ordered, and after the corresponding report is received, a hearing is held "to give the confinee an opportunity to be heard in his defense." With all certainty this provision giving the prisoner the opportunity to be heard was granted by the Legislature upon considering that the revocation of the parole has as an immediate result the final commitment of the parolee for the unserved portion of the original sentence and the elimination, as part of the service of sentence, of the period of time elapsed between the date he was set free on parole and the date of the new arrest. *Mayo* v. *Lukers*, 53 So. 2d 916 (Fla. 1951); Hendrix, *Parole —Gain Time Credits Forfeited Upon Revocation*, 30 N.C.L.R. 187 (1952); *cf.* 27 Minn. L. R. 200 (1942–43). It also has the effect of restraining the prisoner physically in case his reincarceration is ordered.

It is unnecessary to stop and examine whether the prisoner would have the constitutional right, as part of the due process of law guaranteed by our Constitution, to have a hearing before revoking the parole which might have been granted to him, since in every way the local statute provides, as we

have stated, that a hearing be held to hear his defense.[3] However, it is necessary to make clear that this hearing may be of a speedy and informal character, *cf. Hiatt* v. *Compagna,* 178 F.2d 42 (Cir. 5, 1949); *United States ex rel. De Lucia* v. *O'Donovan,* 178 F.2d 876 (Cir. 7, 1950), certiorari denied 340 U. S. 886 (1950), as it is inconceivable that it must be surrounded by all the requirements of a judicial hearing. Considerations of a practical order, among others, overrule said position,[4] which would preclude the Board or administrative agency which hears these cases, from giving them prompt attention, specially considering that under the local statute, if the arrest of the prisoner has been ordered, the hearing must be held within 45 days after the arrest is made.

---

[3] The majority rule in the American courts, including the Supreme Court of the United States (*Burns* v. *United States,* 287 U.S. 216 (1932)), is to the effect that there are no limitations of a constitutional character for the revocation of a parole. This position is justified by four different grounds: that the parole is (1) an act of grace or clemency which may be withdrawn discretionarily by the State; (2) partakes of the nature of a contract between the prisoner and the State, one of its condition being that it may be revoked at the discretion of the latter; (3) is a way of serving sentence (*cf. Emanuelli* v. *District Court,* 74 P.R.R. 506 (1953)), and (4) it is an incident occurred subsequent to the sentence after a prosecution in which the accused was given all the protection required by the Constitution. For a discussion on this aspect, see *Right to notice and hearing before revocation of suspension of sentence, parole, conditional pardon or probation,* 29 A.L.R. 2d 1074 (1953); *Parole Revocation Procedures,* 65 Harv. L. R. 309 (1951); Weihofer, *Revoking Probation, Parole or Pardon Without a Hearing,* 32 J. Crim. L. and Criminology 531 (1942).

[4] The yearly report of the Parole Board corresponding to the year 1959–60 contains the statistics of the number of cases in which parole was granted and the cases in which it was revoked, as follows:

| Year | Cases Granted | Cases Revoked |
|---|---|---|
| 1946–47 | 339 | 12 |
| 1947–48 | 192 | 15 |
| 1948–49 | 365 | 17 |
| 1949–50 | 562 | 41 |
| 1950–51 | 622 | 73 |
| 1951–52 | 1, 068 | 78, |
| 1952–53 | 1, 479 | 129 |
| 1953–54 | 1, 239 | 200 |
| 1954–55 | 1, 039 | 174 |

Of course, this hearing must have certain minimum requisites, so as not to be contrary to the most elementary principles of order and justice.[5] Naturally the prisoner must: (a) be notified of the acts with which he is charged as cause for revocation in order that he may prepare himself adequately to refute the charges made against him; (b) be granted the opportunity of preparing himself to confront the charges and present evidence in his favor; (c) be offered the opportunity to be present at all the hearings held, to hear the testimony against him and cross-examine the witnesses against him; and (d) be granted the opportunity to have counsel, if he so wishes.[6] *State* v. *Zolantakis*, 259 Pac. 1044, 1047 (1927); *People* v. *Hill*, 300 N.Y.S. 532 (1937); *Crenshaw* v. *State*, 161 A.2d 669; *Fleming* v. *Tate*, 156 F.2d 848 (1946); *United States* v. *Hollien*, 105 F. Supp. 987 (1952);

| Year | Cases Granted | Cases Revoked |
|---|---|---|
| 1955–56 | 609 | 131 |
| 1956–57 | 544 | 87 |
| 1957–58 | 665 | 79 |
| 1958–59 | 495 | 78 |
| 1959–60 | 576 | 86 |
| Total | 9,794 | 1,200 |

It appears, therefore, that in 14 years that the Board has been functioning, the percentage of revocations is 12.25. See Bates, *On the Uses of Parole Restrictions*, 33 J. Crim L. & Criminology 435 (1943).

[5] For a discussion on the elements of the hearing for the revocation, see, the annotation and the articles cited in footnote 3 and also, Flandrick, *Revocation of Conditional Liberty*, 28 So. Cal. L. R. 158, 169–74 (1955); *Necessity of Due Process to Revoke Parole*, 24 Minn. L. R. 584 (1939–40); Belshaw, *Elements of Hearing in Revocation of Parole Proceedings*, 37 J. Crim. L. & Criminology 308 (1946–47); 41 Ill. L. R. 277 (1946–47).

[6] *Fleming* v. *Tate*, 156 F.2d 848 (1946); against, *Lopex* v. *Madigan*, 174 F. Supp. 919 (Cal. 1959). Generally in those cases in which the opportunity to be assisted by counsel has been denied, if the prisoner so wishes, the statute merely provides that he shall have a right to appear. *Federal Convict on Conditional Release Held to Have no Right to Counsel at Parole Board Revocation Hearing*, 108 U. Pa. L. R. 423 (1960). Our statute is much more comprehensive and grants "hearing to be heard in his defense."

*People* v. *McMann*, 184 N.Y.S. 2d 922 (1959) ; *In Re McLeod*, 83 N.W.2d 340 (Mich. 1957) ; *Lockwood* v. *Rhodes*, 129 A.2d 549 (Del. 1957) ; *Hooper* v. *State*, 297 S.W.2d 78 (Tenn. 1956) ; *McDaniel* v. *State*, 254 S.W.2d 785 (Tex. 1953) ; *Martin* v. *Warden of Penitentiary*, 182 F. Supp. 391 (1960). We point out, however, that this is not a judicial hearing and that it is not governed strictly by the rules of evidence, and that the officer who receives the evidence has considerable discretion as to the order in which the evidence is introduced and as to the extent of the examination and cross-examination.

We understand that possibly the immediate result of this opinion shall be an increase in the already burdened calendar of the Parole Board, but we believe this is a minimum price to pay when compared to the unquestionable benefits that will be derived from the establishment of a procedure involving adequate guarantees for the individual. It is not a question of mere formalities, but a question where the liberty of an individual is at stake. Where a human value such as the individual freedom is involved and it escapes all appreciation, we cannot stop to consider a question of practical order or of an economic nature, because of the cost that this might represent to the State. We are certain that when the lawmakers granted the prisoner to whom they are trying to deprive of his parole, a "hearing to be heard in his defense," they were not thinking of a mere formality to comply with certain democratic appearances. And translating their thought into action, we do not see how we can deny the minimum requisites previously mentioned.[7]

We have examined the evidence presented at the trial court and we are satisfied that the petitioner was not present at the hearing in which the complainant testified, and that,

---

[7] The Report of the Governor's Committee for the study of Civil Rights in Puerto Rico of 1959, recommends that "The Committee for Penal Reform should review the functioning of the parole and indeterminate sentences and probation which actually have important defects." (At 187.)

therefore, he did not have the opportunity to cross-examine him. The fact that he was possibly notified of the charges against him does not cure this defect of the hearing.

## II

There is no doubt that pursuant to the provisions of § 8 of the Parole Act herein copied, it is incumbent on the Board, and not on any of its individual members, to adopt and render the order revoking the parole granted. In the case at bar the evidence shows that albeit a hearing was held before only one of the members of the Board, the Board in full heard the petitioner at the hearing held on October 5, and immediately adopted the order for the revocation with the consent of all the members present. As a matter of fact the indispensable condition is that the agreement to decree the revocation be approved by the affirmative vote of at least two of the three members of which the agency is composed. The hearing to receive the evidence on the alleged violation of the conditions of the parole, must not necessarily be held before the Board, or any of its members. It may take place before a master who receives the evidence. It is important, however, that the order of revocation be adopted by the Board, and that in doing so, the proper findings of fact be made, after carefully weighing all the evidence. Only then, would the courts be in a satisfactory position to review any decree unfavorable to the prisoner. This review involves two aspects: (1) matters of law, substantive as well as adjective; and (2) clear abuse of discretion when revoking the parole. To accomplish an effective review it is necessary for the Board to send to the court the record of the original documents of the revocation incident, and the record of the hearing held, if any, jointly with a statement of the facts proved to which we have referred. In this way, it is possible that in the majority of the cases the court may not

deem it necessary to hear the evidence. *Cf. Medina* v. *Pons*, 81 P.R.R. 1, 6–9 (1959).

In *People ex rel. Seiler* v. *Hill*, 181 N.E. 295 (Ill. 1932), the order of the revocation of the parole granted to the petitioner was challenged. Although the State Board consisted of ten members, the hearings were conducted before only two and three members. In dismissing the challenge the court indicated that such a challenge might have had been valid if it had been shown that the agreement for the revocation was adopted by a minority, but the return showed that it had been approved by all the members. The practice of dividing the work of the hearings among members was approved, as long as the agreements on the revocation were adopted by the majority of the members of the body. *Cf. León* v. *Industrial Commission*, 58 P.R.R. 905 (1941) and *Santini* v. *Industrial Commission*, 57 P.R.R. 401 (1940).

The error assigned was not committed.

### III

 The third error is clearly frivolous. The requirement that the hearing be held within 45 days is applicable only to cases in which, the complaint having been received, the arrest and commitment of the prisoner is ordered. In the case at bar the petitioner was not arrested before the hearing was held. The limitation imposed by the Legislature undoubtedly pursues the purpose of preventing that a prisoner be indefinitively committed without a hearing, in view of the possibility that the Board might release him after he is heard. *Cf.* Art. II, § 11 of the Constitution of the Commonwealth of Puerto Rico.

In view of the fact that the first error was committed, the judgment rendered by the Superior Court, San Juan Part on April 20, 1960 will be reversed and the release of the petitioner Bonocio Román Cancel from jail is hereby ordered, subject to any further proceeding before the Parole Board.