Robert E. JONES, Appellant,

v.

Hugh F. RIVERS, et al., Donald Clemmer, et al., Appellees.

No. 9158.

United States Court of Appeals
Fourth Circuit.

Argued Jan. 23, 1964.

Decided Nov. 4, 1964.

Lawrence Speiser, Washington, D. C. [court-assigned counsel] (Mark A. Weiss, Washington, D. C., on brief), for appellant.

MacDougal Rice, Asst. U. S. Atty. (C. V. Spratley, Jr., U. S. Atty., on brief), for appellees.

Before SOBELOFF, Chief Judge, and HAYNSWORTH and BOREMAN, Circuit Judges.

BOREMAN, Circuit Judge.

Appellant, Robert E. Jones, is now confined in the District of Columbia Reformatory at Lorton, Virginia. On June 3, 1955, he was convicted in the United States Court for the District of Columbia of a violation of Section 3501(a), Title 22, of the District of Columbia Code and was sentenced to a term of three to nine years. After serving nearly six years at the Lorton Reformatory,

he was conditionally released on March 24, 1961. However, on December 19, 1961, he was returned to Lorton pursuant to a warrant charging him with violation of conditions of his release. On April 18, 1962, his conditional release was reinstated by the District of Columbia Board of Parole and he was given his freedom from confinement.

On September 30, 1962, Jones was again arrested and was returned to Lorton pursuant to a warrant issued by the District of Columbia Board of Parole charging him with a violation of the conditions of his release. On October 25, 1962, he was given a hearing before the D. C. Board of Parole and on the same day the Board revoked his parole and ordered him to serve the remainder of his original sentence.

Jones instituted this habeas corpus proceeding and we accept his assertion that he "alleged, in substance, that his confinement was unlawful because the 'hearing' pursuant to which his parole was revoked did not satisfy the requirements of law—in particular, because appellant [Jones] an indigent, was not furnished the assistance of counsel, nor advised of his right to have counsel appointed to assist him." He prayed his release from confinement.

The District Court conducted a hearing on June 18, 1963, and found that Jones had not been informed of his right to be represented by his own counsel before the Board, that he had not waived this right and, consequently, he had not had the parole revocation hearing to which he was entitled. From the record it appears that the court orally stated the conclusion that there was no requirement that counsel be appointed to represent Jones at the Board hearing. It was formally ordered that the Board of Parole should, after at least thirty days' notice, hold a new hearing with respect to parole revocation. The order provided that Jones "be given an op-

portunity to secure and have available for such hearing counsel of his own choosing and employment, and such witnesses as the petitioner desires" and that the Petition for Writ of Habeas Corpus be denied "with respect to the request for release from imprisonment."

The Board of Parole then fixed upon July 26, 1963, as the date for a new hearing and gave the required thirty day notices to the interested parties. Jones was advised that he was being given an opportunity to secure and have available for such hearing counsel of his own choosing and employment.

On July 1, 1963, after receipt of notice of the new hearing, Jones filed his notice of appeal. However, we are informed that, pursuant to the order of the court below, the District of Columbia Board of Parole proceeded to hold another hearing on the date fixed therefor at which Jones was present *without* counsel. His parole was again revoked.

Tersely stated, the only question presented on appeal is whether due process requires that an indigent parolee be provided with appointed counsel at parole revocation proceedings before the District of Columbia Board of Parole. Judges Haynsworth and Boreman have concluded that there is no such requirement and the latter has prepared this opinion. Judge Haynsworth has elected to file a separate notation of special concurrence. Chief Judge Sobeloff, concurring specially as to the result in this case, has fully stated his views in a separate opinion filed herewith.

The District of Columbia Board of Parole was created by Congress in 1932 and vested with all the powers and authority of the Federal Parole Board over persons committed to the D. C. penal institutions. However, Congress has seen fit to amend the D. C. parole laws as will be hereinafter shown.

Under the provisions of D.C.Code, § 24–206,[1] a parolee charged with violation

1. "When a prisoner has been retaken upon a warrant issued by the Board of Parole, he shall be given an opportunity to ap-

pear before the Board, a member thereof, or an examiner designated by the Board. *At such hearing he may be*

of the conditions of his release is entitled to an "opportunity to appear" for a hearing before the Board of Parole, a member thereof or a designated examiner, and "may be represented by counsel" at such hearing in advance of any decision of the Board to revoke his parole. Prior to 1947, the Section did not specifically state that the parolee might be represented by counsel and there was no provision for an appearance before a member of the Board or an examiner designated by the Board. However, in Fleming v. Tate, 81 U.S. App.D.C. 205, 156 F.2d 848 (1946), the Court of Appeals for the District of Columbia Circuit held that the words, "opportunity to appear [before the Board]," in that Section meant that the parolee had a right to an *effective* appearance, which included the right to be represented by counsel of his own choice and employment if he so desired. But, at page 849 of 156 F.2d, the court

made the unequivocal pronouncements: "The question is one of statutory construction. No constitutional right is involved, as parole is a matter of grace," and "[i]t is not necessary that counsel be assigned, as the requirement here is not jurisdictional." Prior to Fleming v. Tate, it was the practice to refuse to permit counsel to appear at revocation hearings. Following this decision, Congress amended Section 24–206 of the D. C. Code to specifically provide for the appearance by the prisoner before the Board, *a member thereof, or a designated examiner*, and "[a]t such [revocation] hearing he [the prisoner] may be represented by counsel." [2] In the comparable federal statute, 18 U.S. C. § 4207 (applicable to federal prisoners generally outside the District of Columbia), there is no provision in terms either requiring or permitting representation of the parolee by counsel at such hearings.[3]

*represented by counsel*. The Board may then, or at any time in its discretion, terminate the parole or modify the terms and conditions thereof. If the order of parole shall be revoked, the prisoner, unless subsequently reparoled, shall serve the remainder of the sentence originally imposed less any commutation for good conduct which may be earned by him after his return to custody. For the purpose of computing commutation for good conduct, the remainder of the sentence originally imposed shall be considered as a new sentence. The time a prisoner was on parole shall not be taken into account to diminish the time for which he was sentenced.

"In the event a prisoner is confined in, or as a parolee is returned to a penal or correctional institution other than a penal or correctional institution of the District of Columbia, the Board of Parole created by * * * (* * *; 18 U.S.C. § 723a), shall have and exercise the same power and authority as the Board of Parole of the District of Columbia had the prisoner been confined in or returned to a penal or correctional institution of the District of Columbia." (July 15, 1932, 47 Stat. 698, ch. 492, § 6; June 6, 1940, 54 Stat. 242, ch. 254, § 5; July 17, 1947, 61 Stat. 379, ch. 263, § 5.) (Emphasis added.)

2. Act July 17, 1947, 61 Stat. 379, ch. 263, § 5.

3. There are other points of dissimilarity between D.C.Code § 24–206 and 18 U.S.C. § 4207. The latter statute reads as follows:

"Revocation upon retaking parolee

"A prisoner retaken upon a warrant issued by the Board of Parole, shall be given an opportunity to appear before the Board, a member thereof, or an examiner designated by the Board.

"The Board may then, or at any time in its discretion, revoke the order of parole and terminate such parole or modify the terms and conditions thereof.

"If such order of parole shall be revoked and the parole so terminated, the said prisoner may be required to serve all or any part of the remainder of the term for which he was sentenced."

It will be noted that § 24–206 provides that the time a prisoner was on parole shall not be taken into account to diminish the time for which he was sentenced, and upon revocation of parole the remainder of the sentence originally imposed is to be considered as a new sentence. By 18 U.S.C. § 4207 the Board of Parole may require the prisoner to serve *all or any part* of the remainder of the term for which he is sentenced.

It is a point of interest that 18 U.S.C. § 4207 was enacted in its present form

Subsequent to the 1946 decision in Fleming v. Tate, supra, the Court of Appeals for the District of Columbia Circuit had opportunities to consider the right of indigents to representation by counsel at parole revocation hearings under 18 U.S.C. § 4207. In Robbins v. Reed, 106 U.S.App.D.C. 51, 269 F. 2d 242 (1959), the court interpreted that portion of 18 U.S.C. § 4207, providing that a prisoner retaken upon a warrant issued by the United States Parole Board "shall be given an opportunity to appear before the Board, a member thereof, or an examiner designated by the Board," as embodying the *statutory procedural requirement* that the prisoner, if he so elects, should be given an opportunity to appear with counsel and to present testimony. At page 244 of 269 F.2d the court referred to its earlier decision in Moore v. Reid[4] and reaffirmed its holding therein "that the prisoner does not waive this statutory privilege when he is not advised that he has it." In Glenn v. Reed, 110 U.S.App. D.C. 85, 289 F.2d 462 (1961), the reimprisoned parolee sought a declaration that the hearing on revocation of his parole was invalid and, additionally, a mandatory injunction ordering his release. It is apparent that the statute

there involved was 18 U.S.C. § 4207 since the proceeding was brought against the United States Board of Parole, et al., by a federal prisoner from Ohio who was then imprisoned at Atlanta. The court held that the revocation of parole was invalid because the prisoner neither had nor was offered counsel at his hearing before the Board. Certain other decisions of the same court arising under the general federal parole statute are noted below.[5]

We next turn our attention to the more recent decision in Hyser v. Reed, 115 U.S.App.D.C. 254, 318 F.2d 225 (1963), in which eight separate cases arising from parole revocation proceedings were consolidated for consideration by the court, sitting en banc. Judge Burger wrote the majority opinion in which Judges Miller (Wilbur K.), Washington, Danaher and Bastian concurred. Several issues were presented and considered,[6] among them being the question of the right of an indigent parolee to appointment of counsel. Involved there were the provisions of the general federal parole statute, 18 U.S.C. §§ 4201– 4210, while in the case at bar we are concerned with only one question arising under D.C.Code § 24–206. However, in

on June 25, 1948 (ch. 645, 62 Stat. 855), almost a year following the enactment of D.C.Code § 24–206 in which Congress inserted the provision that a parolee *may* be represented by counsel at a revocation hearing.

4. 100 U.S.App.D.C. 373, 246 F.2d 654 (1957).

5. Hurley v. Reed, 110 U.S.App.D.C. 32, 288 F.2d 844 (1961). Action for declaratory judgment. Opinion by Mr. Justice Reed, sitting by designation. Held: By 18 U.S.C. § 4207, parolee is entitled to have counsel present at revocation hearing before hearing officer of the Board and must be advised of that privilege; question of right to counsel may be raised in declaratory judgment action in D. C. District Court, notwithstanding prisoner might have proceeded by habeas corpus in federal district court in district of his confinement.
Reed v. Butterworth, 111 U.S.App.D.C. 365, 297 F.2d 776 (1961). Action for

declaratory and injunctive relief. Held: Alleged parole violator was entitled to counsel and to present voluntary witnesses at hearing before a member of Parole Board.
Barnes v. Reed, 112 U.S.App.D.C. 192, 301 F.2d 516 (1962). Action for declaratory and injunctive relief. Held: Alleged parole violator was entitled to representation by counsel of his own choice, to testify in his own behalf and to present testimony of voluntary witnesses at hearing before an examiner for the Parole Board.

6. The retaken parolees claimed that they were entitled to revocation hearings before the Board which include (a) *appointed counsel for indigents,* (b) specification of charges, (c) confrontation and cross-examination of the Board's informants, (d) right to examine confidential reports of the Board, (e) compulsory process to obtain witnesses, and (f) a hearing held in the district where the alleged parole violation occurred.

view of the interpretation by the Court of Appeals for the District of Columbia Circuit of similar provisions in 18 U.S.C. § 4207 and D.C.Code § 24–206 (prior to amendment of the latter statute in 1947), we think Hyser v. Reed, supra, is of interest here.

With reference to appointment of counsel the majority of the court, in Hyser, said:

"Appellants concede that Congress has not authorized the Parole Board to appoint counsel for indigent parolees appearing before it and that Congress has not empowered the federal courts to make such appointments. The decisions of this court which hold that the parolee must be advised of his right to have retained counsel present are based on judicial construction of the words 'opportunity to appear before the Board' in 18 U.S.C. § 4207. [Case citations omitted.] They do not stand for the proposition that the presence of counsel is mandatory whenever a parolee appears before the Board or that parole revocation proceedings were to become adversary proceedings.

"* * * No case has yet held that an interested party in an administrative or regulatory proceeding is entitled to be furnished with counsel if he cannot afford one of his own choice.

"We hold due process does not require that indigent parolees be provided with appointed counsel when they appear before the Parole Board in revocation proceedings." 318 F. 2d 225, at 238.

In Hyser the majority rejected the contention that the right to counsel at a revocation hearing springs from the due process requirements of the Fifth Amendment as applied to actions of the Parole Board. In that connection the majority opinion states:

"The Bureau of Prisons and the Parole Board operate from the basic premise that prisoners placed in their custody are to be rehabilitated and restored to useful lives as soon as in the Board's judgment that transition can be safely made. This is plainly what Congress intends. Thus there is a genuine identity of interest if not purpose in the prisoner's desire to be released and the Board's policy to grant release as soon as possible. Here there is not the attitude of adverse, conflicting objectives as between the parolee and the Board inherent between prosecution and defense in a criminal case. Here we do not have pursuer and quarry but a relationship partaking of parens patriae. In a real sense the Parole Board in revoking parole occupies the role of parent withdrawing a privilege from an errant child not as punishment but for misuse of the privilege. 'Probation workers making reports of their investigations have not been trained to prosecute but to aid offenders.' Williams v. People of State of New York, 337 U.S. [241] at 249, 69 S.Ct. [1079] at 1084 [93 L.Ed. 1337]. Perhaps the more correct view is that retributive justice is satisfied by the *conviction* whereas the *sentence* is a process of treatment. It is important to bear this in mind in determining whether there would be any gain to the parolee or to society in taking steps urged by the dissenting opinions which tend to equate parole processes with criminal prosecutions." 318 F.2d 225, at 237–238.

In discussing the parole statutes generally, the majority declared that the legal proceeding most comparable to revocation of parole is revocation of probation. The opinion points out that the Supreme Court has considered claims by probationers that they be accorded full-dress hearings by the District Court before revocation of probation and in each instance the court has rejected the claim. At 318 F.2d 236, the majority quoted Mr. Justice Cardozo, who, speaking for the Court in Escoe v. Zerbst,

295 U.S. 490, 493, 55 S.Ct. 818, 820, 79 L.Ed. 1566, said:

"'Clearly the end and aim of an appearance before the court must be to enable an accused probationer to explain away the accusation. * * * This does not mean that he may insist upon a trial in any strict or formal sense. * * * It does mean that there shall be an inquiry so fitted in its range to the needs of the occasion as to justify the conclusion that discretion has not been abused by the failure of the inquisitor to carry the probe deeper.'"

In discussing this point further, the majority in Hyser said:

"While there are distinguishing factors between probation and parole, the underlying purposes are closely allied. In each the entity which grants is the entity which is empowered to revoke. In each situation the revoking authority is being exercised pursuant to explicit statutory authority. Moreover that power is being exercised by a person or persons experienced in sifting and weighing evidence and evaluating the factors involved in the grant or revocation of conditional freedom. Congress, which is the source of both of these penological devices has given no indication that the revocation of parole should be more difficult or procedurally different than revocation of probation." 318 F.2d at 236.

Amplifying the view with respect to the status of a parolee, the majority stated:

"From our review of the nature and purposes of parole it can be seen that appellants are neither totally free men who are being proceeded against by the government for commission of a crime, nor are they prisoners being disciplined within the walls of a federal penitentiary. They stand somewhere between these two. A paroled prisoner can hardly be regarded as a 'free' man; he has already lost his freedom by due process of law and, while paroled, he is still a convicted prisoner whose tentatively assumed progress towards rehabilitation is in a sense being 'field tested.' Thus it is hardly helpful to compare his rights in that posture with his rights before he was duly convicted." 318 F.2d at 235.

Judge Washington filed a concurring opinion in which he took note of the purport of the earlier decisions of that court. Said he:

"* * * Section 4207 of Title 18 requires the Board to afford the parolee 'an opportunity to appear,' and we have heretofore held that this opportunity to appear, in order to be an effective one and to represent a real protection of the parolee, embodies a right to bring retained counsel, * * *." 318 F.2d at 247.

At page 248 Judge Washington continued:

"* * * I believe that Congress, in providing for an opportunity to appear, sought to give the parolee a suitable forum in which to plead his cause—a meaningful proceeding, to be sure, but still an informal one. In my view, we cannot read into the statute the further requirements that appellants ask us to impose. These would transform revocation proceedings into full-dress adjudicatory hearings, with the Board put to its proof in every case. Congress clearly did not envision these proceedings as prosecutions in the traditional sense, and I do not understand it to be the proper role of the courts to work such radical changes unless constitutional considerations of a compelling nature appear. For the reasons given by Judge Burger, I do not find such considerations present here."

Chief Judge Bazelon and Judge Edgerton, while concurring in part with the majority, unequivocally expressed their

disagreement with the majority view concerning the right of indigent parolees to *appointment* of counsel. They refer to the court's earlier decisions to the effect that appointment of counsel for indigent parolees is not required. They brush aside these decisions by saying that since all of those cases involve parolees who, *as far as appears*, were able to retain counsel, the court's earlier statements are dicta and not controlling here. They disagree with the reasons assigned by the five majority judges in support of their conclusions. We quote from the dissenting opinion of these two eminent jurists, 318 F.2d at 255, as follows:

> "Furthermore, were we to construe the statutory grant of the right to counsel as intended only for those who can pay, substantial constitutional questions would arise. Although the Federal Government is not directly limited by an 'equal protection of the laws' clause, the Supreme Court has held that 'discrimination [by the Federal Government] may be so unjustifiable as to be violative of due process.' The Supreme Court has repeatedly held that in criminal trials, discrimination 'on account of poverty' is as unjustifiable as discrimination 'on account of religion, race, or color,' because it 'bears no rational relationship to a defendant's guilt or innocence.' Griffin v. Illinois, 351 U.S. 12, 17–18, 76 S.Ct. 585, 589–590, 100 L.Ed. 891 (1956). Poverty bears no more relationship to the question of parole violation than to the question of guilt. Therefore congressional discrimination against parolees who cannot afford counsel would raise serious problems of due process of law. To avoid such problems we should construe the statute to provide for the appointment of counsel for such parolees. Cf. Lynch v. Overholser, 369 U.S. 705, 82 S. Ct. 1063, 8 L.Ed.2d 211 (1962)."

Thus it is apparent that they read into 18 U.S.C. § 4207, which contains no specific reference to counsel, the unqualified right of every parolee to be represented either by retained or appointed counsel at a revocation hearing —a right guaranteed by the due process clause of the Constitution.

Judge Fahy, joined by Judge J. Skelly Wright, filed an opinion, concurring in part and dissenting in part. While viewing the revocation proceedings as nonadversary, Judge Fahy stated that personal liberty is involved and such proceedings must conform with due process of law. In the following quotations lifted from his opinion will be found the substance of his conclusions:

> "* * * But due process of law varies widely with circumstances. Hannah v. Larche, 363 U.S. 420, 80 S.Ct. 1502, 4 L.Ed.2d 1307 (1960); Yakus v. United States, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834 (1944). It is one thing in a prosecution for crime. It is another in administering the parole system. In some aspects of the parole system due process of law is like that applicable to the revocation of probation, the nature of which is explained in Burns v. United States, 287 U.S. 216, 53 S.Ct. 154, 77 L. Ed. 266 (1932), or to sentencing, reviewed in Williams v. People of State of New York, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949). And see Escoe v. Zerbst, 295 U.S. 490, 55 S.Ct. 818, 79 L.Ed. 1566 (1935). The Board must obey applicable legislation but otherwise it seems to me the Board is required only to perform its functions fairly under fair procedures. It may not act unreasonably or arbitrarily." 318 F.2d at 258.

> \* \* \* \* \* \*

> "* * * At the hearing he should have the opportunity to be heard in person and to present witnesses, to bring counsel to assist him, and to have access to, and, on request, confrontation, of the sources of information as to the alleged

violation, with right of cross-examination." 318 F.2d at 259.

\* \* \* \* \* \*

"In all the above the Board, from the very beginning and through each step must act on behalf of the parolee as well as in the public interest. Counsel, though permitted, I think is not in these circumstances the touchstone of due process, either traditionally or rationally. \* \* \*" 318 F.2d at 260.

"The impact of a parole violation is upon a conditional personal liberty. This is not the same as the impact on liberty of a trial for crime. While due process is required, this does not as a rule for parole violation call for a procedure broken down into the right to have counsel appointed, or to have compulsory process. If, however, these appear in a particular case to be essential to the reaching of a fair and reasonable result by the Board the Board may not validly act without them. Ordinarily this is not the situation. Perhaps it is of some use to add that the action of the Board is subject to judicial review, with counsel appointed for an indigent if requested, and with compulsory process also available." 318 F.2d at 260.

Judge J. Skelly Wright filed his separate opinion in which he advocated a hearing *before* any determination as to retaking the parolee is made and *before* the issuance of a warrant. In his view this hearing should be nonadversary and relatively informal, with the rules of evidence relaxed as indicated in the majority opinion. He advocates the appointment of a probation officer to assist the parolee in his defense if he denies the charges and is not represented by counsel, such appointment to be made pursuant to 18 U.S.C. § 3655 authorizing the Attorney General to assign to probation officers "duties with respect to persons on parole." In note 1 appended

to Judge Wright's opinion, 318 F.2d 261, he states his position as follows:

"I also concur in most of what is so well stated in the excellent opinion of Judges Bazelon and Edgerton. With me, however, the primary attribute of a good parole system is a liberal parole policy. Requiring a full-dress second trial, even limited to questions of fact, would, in my judgment, militate against such a policy. Rights to assigned counsel and compulsory process in revocation proceedings are obviously desirable, but the price in terms of the number of persons paroled, or, more accurately, not paroled, may be too high. For the time being I would accept the nonadversary hearing with a probation officer assisting the parolee. As stated in the text, I believe that such protection conforms with the current concept of due process and it is possible within the statutory framework. Compare Greene v. McElroy, 360 U.S. 474, 507–508, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959)."

Other courts have interpreted the parole statutes and have expressed their views with reference to representation of parolees by counsel. In Hiatt v. Compagna, 178 F.2d 42 (5 Cir. 1949), affirmed by equally divided Court, 340 U.S. 880, 71 S.Ct. 192, 95 L.Ed. 639, reh. den., 340 U.S. 907, 71 S.Ct. 277, 95 L.Ed. 656 (1950), the court stated that parole revocation is informal and discretionary and that 18 U.S.C. § 4207 does not provide for any "hearing" other than an "appearance" afforded a parolee returned to custody. Noting that the 1940 amendment to the law provided for an "opportunity to appear before the Board, a member thereof, or an examiner designated by the Board" instead of an opportunity to appear only before the Board as theretofore provided, the court reasoned that such change cut deeply into the idea that the "appearance" is to be a trial and that since the appearance could be before an examiner, it

would seem that the taking of the testimony of the prisoner, and perhaps his witnesses, is alone contemplated. It was held that the "opportunity to appear" did not embrace the right to assistance of counsel.

The Third Circuit considered an appeal based upon the sole ground that the habeas corpus petitioner, a prisoner whose parole had been revoked, did not have counsel and was not told that he was entitled to counsel. The court, speaking through Judge Goodrich in Washington v. Hagan, 287 F.2d 332 (3 Cir. 1960), affirmed the judgment of the lower court and held that the parolee was not entitled to counsel at his revocation hearing. At 287 F.2d 333, the court said:

> "On the merits of the case there is divided authority. The District of Columbia Circuit decided in a case involving the district only that a parolee was entitled to counsel at his hearing. Fleming v. Tate, 1946, 81 U.S.App.D.C. 205, 156 F.2d 848, 849. That Court interpreted the words 'opportunity to appear' to include 'opportunity to appear with counsel.' The statute applicable to the district was amended to codify this decision. But later the Court of Appeals for that Circuit decided the question the same way in a case not involving the local statute. Robbins v. Reed, 1959, 106 U.S.App. D.C. 51, 269 F.2d 242. In the meantime, the revision of 18 U.S.C. had reenacted the provision for a parolee's hearing without putting in the clause allowing counsel at the revocation hearing."

The court, after noting that it had been the practice for more than fifty years to allow a prisoner a hearing but not representation by counsel, said at page 334:

> " * * * We think the practice is right because this matter of whether a prisoner is a good risk for release on parole or has shown himself not to be a good risk, is a disciplinary matter which by its very nature

should be left in the hands of those charged with the responsibility for deciding the question. * * *

> "The period of contentious litigation is over when a man accused of crime is tried, defended, sentenced and, if he wishes, has gone through the process of appeal. Now the problem becomes one of an attempt at rehabilitation. The progress of that attempt must be measured, not by legal rules, but by the judgment of those who make it their professional business. So long as that judgment is fairly and honestly exercised we think there is no place for lawyer representation and lawyer opposition in the matter of revocation of parole.

> "We quite realize that this conclusion is contrary to the one reached by our brethren in the District of Columbia. We are satisfied that the result we reach is the proper one. Nevertheless, the final word must either come from the Congress or the Supreme Court."

Judge Goodrich rejected the argument that the reenactment of the general federal parole statute without the permissive provision for counsel representation shows that it was the intent of Congress not to allow it. In footnote 4, 287 F.2d 334, he cogently observes:

> "It is worth noting in this connection that the change in the District of Columbia Code was considered and reported to the Congress by the District of Columbia Committees of the respective Houses while the revision of Title 18 of U.S.C. came out of the Judiciary Committees."

In Gibson v. Markley, 205 F.Supp. 742 (D.C.S.D.Ind.1962), the petitioner, a federal prisoner whose parole had been revoked, sought habeas corpus relief because at his "appearance" before a *member* of the United States Board of Parole required by 18 U.S.C. § 4207, he was not given the opportunity to have counsel. The court held, in substance, that the revocation hearing must be more than a mere formality although there is no right

to a "court trial" on the parole revocation issue; that the hearing need not measure up to the requirements of the Administrative Procedure Act, 5 U.S.C. § 1001 et seq.; that petitoner was not entitled to representation by counsel at the revocation hearing; and that, upon review, a court will not upset the Board's decision unless an abuse of discretion is shown. Incidentally, the court took note of the prior decisions of the District of Columbia Circuit and stated:

> "The court is aware that the District of Columbia Circuit Court of Appeals has held that a prisoner must be given the right to have counsel present at such hearings * * *. However, even in that circuit, a district court has held that the prisoner has no right to have counsel appointed, nor to have compulsory attendance of witnesses. Martin v. United States Board of Parole, 199 F.Supp. 542 (D.D.C. 1961)." 205 F.Supp. at 743.

In Hock v. Hagan, 190 F.Supp. 749 (D.C.M.D.Pa. 1960), a retaken federal parolee sought habeas corpus relief because he had asked whether he could have counsel present at his revocation hearing and his request was refused by the Parole Board representative. The court there attached significance to the fact that Congress had, in 1947, inserted into the District of Columbia parole statute the provision that a parolee "may be represented by counsel" at his revocation hearing and, in 1948, when amending U.S.C. § 4207, did not include such a provision—a clear indication of the deliberate intention of Congress to provide different procedures for parole violators subject to the federal statute. The court held that the parolee had no right to counsel at a parole revocation hearing and stated:

> " * * * A revocation hearing is not a trial, nor indeed is it primarily concerned with the commission of an offense. As a matter of fact, a prisoner having been granted his conditional freedom on parole, the sole question before the Board, the deter-

mination of which may be delegated to a single member or even an examiner, is whether the parolee, in the judgment of the Board, is still a good parole risk. That determination presupposes an informal type of conference far removed from the technical ritual of a trial." 190 F. Supp. at 751.

Involved in Poole v. Stevens, 190 F. Supp. 938 (D.C.E.D.Mich.1960), was the right of a parolee to have counsel present at his revocation hearing under 18 U.S.C. § 4207. The court held: That the right to counsel is not encompassed by statutory language "opportunity to appear"; that parole is purely a matter of grace; that a prisoner released on parole actually remains in the legal custody and under the control of the Attorney General and is otherwise subject to the discretionary power of the Parole Board even while physically outside the prison. The court approved and followed Hock v. Hagan, supra, 190 F.Supp. 751.

Martin v. United States Board of Parole was decided by District Judge Holtzoff of the District of Columbia, 199 F. Supp. 542 (1961). It was there held that the parolee is not entitled to have counsel assigned to represent him at his revocation hearing although the Parole Board should not decline to hear either counsel or voluntary witnesses if they appear. We quote from Judge Holtzoff's opinion as follows:

> "The subject of assignment of counsel is an entirely different matter. The right of counsel under the Sixth Amendment does not apply to parole hearings; it applies only to trials in court. This was recognized by the framers of the Federal Rules of Criminal Procedure because Rule 44, 18 U.S.C.A., expressly provides that if the defendant appears in court without counsel, the Court shall advise him of his right to counsel and assign counsel to represent him at every stage of the proceeding unless he elects to proceed without counsel or is able to obtain counsel. The Notes of the Advisory Commit-

tee on the Rules of Criminal Procedure contain the following statement as to this Rule:

" 'The rule is intended to indicate that the right of the defendant to have counsel assigned by the court relates only to proceedings in court.'

"It must be borne in mind in this connection that there is no constitutional right to a hearing before the Parole Board on the question of revocation of parole. The only reason such a right exists is because it is prescribed by statute. The Supreme Court, in an opinion by Mr. Justice Cardozo, many years ago, in the Escoe case [Escoe v. Zerbst, 295 U.S. 490, 55 S.Ct. 818, 79 L.Ed. 1566], held that the hearing prescribed by statute in connection with a revocation of probation, need not be a formal trial. It may be just a summary hearing, merely an opportunity to the defendant to make such explanation as he desires to present; and that has also been construed as meaning that he can be accompanied by counsel of his own choice and by witnesses." 199 F.Supp. at 543.

A report of the Attorney General's Committee on Poverty and the Administration of Federal Criminal Justice [7] indicates grave concern over the problem of providing counsel for indigent persons involved in parole and mandatory release revocation proceedings before the United States Board of Parole. One thing is certain, however, and that is—in its discussion the Committee recognized that present decisions do not require that counsel be appointed.[8]

As an aside we offer the comment that perhaps the time is rapidly approaching when some consideration should be shown for the members of the legal profession also and their rights to provide for their dependent loved ones and to build some

7. February 25, 1963.

8. The Committee noted the fact that appeals were then pending before the District of Columbia Court of Appeals [Hyser v. Reed, 115 U.S.App.D.C. 254, 318 F.2d 225] and reported:

"The Committee believes that it is neither feasible nor proper for it at this time to submit detailed recommendations relating to parole revocation procedures. We shall, however, make some general comments. First, it seems apparent that however the issues raised in the pending legislation are resolved, the Department [of Justice] is called upon to give careful consideration to the devising of new legislative and administrative proposals in this area. Should the courts decide that the Board is required by existing statutes or as a matter of constitutional law to provide representation for prisoners financially unable to retain counsel, compulsory process, rights of cross-examination, confrontation, and the like, substantial modification of existing procedures will have to be effected. But even if these changes are not compelled by judicial decision, the Committee believes that the Department will still be called upon to give careful consideration to these problems. We believe that the government's obligations will be met only when the procedures before the Board reflect the standards of sound policy and scrupulous fairness and that this goal should be pursued however the constitutional minima may be defined by the courts.

"Second, we believe that certain general propositions can be advanced for the solution of these problems. *It is apparent that a proposal like that of supplying counsel to the prisoner without adequate means presents problems both of principle and practice. As a practical matter, it has been doubted that the Board has or can properly be given authority to require attorneys to provide representation in these cases and it has been questioned whether the courts possess authority to appoint counsel to serve in administrative hearings, like the parole revocation proceedings.* * * *" (Emphasis supplied.)

The Committee observed that Congress might properly authorize the federal public defender to assume the obligations of such representation in those districts that elect the public defender system but stated its conclusion that the Department needs to give further consideration, not only to the problem of supplying counsel, but to the other elements of "fair hearing in the revocation proceeding."

semblance of financial protection and security against the time when they may be forced by age or disability to discontinue the practice of their profession. Traditionally, every attorney becomes an "officer" of the court in which he is admitted to practice. As such officer, he is required to obey the court's orders and is subject to the imposition of sanctions for disobedience. When called upon to do so by the court, he is required to defend indigent persons charged with crime, frequently at great personal sacrifice and financial loss. Our general impression is, we are pleased to report, that the appointed counsel accepts his assignment willingly, eagerly and without hint or indication of protest or dissatisfaction. It is to the everlasting credit of the members of the profession that this is so. In many instances, proper representation requires that the appointed attorney shall give hours and days of his time and services, in some cases weeks or even months, all without hope or expectation of remuneration. Quite often his "reward" for his services to an indigent defendant is nothing but embarrassment stemming from his erstwhile "client's" unjustified accusation that his lawyer failed to properly represent him at his trial.

 Certainly, a Board of Parole is not a judicial body. It has no right, statutory or otherwise, to appoint an attorney to represent a parolee at a revocation hearing and we reject the thought or suggestion that the Board should ever be clothed with any such power or authority. Nor should any court be empowered to require one of its attorney officers to undertake such representation before this administrative agency. Congress controls the federal purse and if it should conclude that it is desirable to provide counsel representation in every parole revocation proceeding, it might explore the possibility of placing at the disposal of the parole board sufficient funds to permit the *employment* of counsel to assist those who are financially unable to retain counsel. We do not, however, want to be understood as urging the adoption of such procedure or as indicating any opinion as to its legality.

 Congress, in its wisdom and, in our opinion, motivated solely by the desire to respectfully follow the decision of the Court of Appeals of the District of Columbia in Fleming v. Tate, supra, (156 F.2d 848), amended the D.C.Code so that a district parolee *may* be represented by counsel before the Board. But it appears from the cases that the federal courts generally have determined that the decisions of Parole Boards are subject to judicial review in habeas corpus proceedings as well as in actions for declaratory and injunctive relief. In such proceedings courts may, and do, call upon their attorney officers to represent indigent petitioners and protect them against arbitrary and unreasonable parole revocation orders.

We have indulged in a lengthy discussion of the decisions of a number of federal courts in order to present a cross section of the reasoning advanced by those courts which have interpreted the parole statutes and considered the rights of parolees to counsel representation at revocation hearings. It is apparent that the views of individual judges are not free of conflict. It does seem, however, that almost every conceivable concept has been presented. Of course, we are here particularly concerned only with D.C. Code § 24–206 and the specific provision therein contained—"At such hearing he may be represented by counsel." If however, we accept the view that 18 U.S.C. § 4207 is to be read and interpreted as embodying the same provision, the cases arising under either statute command our attention.

We are not unmindful of the fact, a fact urged as compelling here, that the spread of the due process umbrella is rapidly being enlarged to provide cover and protection for individual rights which, only a few short years ago, had little or no recognition. Our attention is directed to the decisions of the Su-

preme Court [9] which, we are told, serve to illustrate the rapid increase in the size of the protective umbrella and we are quick to acknowledge that there is an accelerating trend in that direction.

Jones contends before us that he was financially unable to retain counsel at his revocation hearing and that whether, in this context, a distinction can be drawn between affluent and indigent parolees is a question not only of policy and logic but also, and in fact, a question of constitutional dimensions. In responding to this contention, we shall state our position on the one question before us, a position which we believe is in accord with the better and the majority view of the courts which have considered this particular problem.

 Due process of law varies widely with circumstances. It is one thing in a prosecution for crime, it is another in administering the parole system. The Board of Parole must obey applicable legislation but otherwise it is only required to perform its functions fairly, under fair procedures; it may not act unreasonably, capriciously or arbitrarily. Freedom, on parole from confinement in a penal institution prior to serving all of an imposed sentence, is a matter of legislative grace—it is neither a constitutionally guaranteed nor a God-given right. Parolees are neither totally free men against whom the government is proceeding for commission of a crime, nor are they prisoners being disciplined within the walls of a federal penitentiary —they stand somewhere between the two.

 Reasonable conditions may be imposed upon the parolee and he may insure his continued liberty by strict observance thereof. The impact of a parole violation is upon a *conditional* personal liberty as distinguished from the impact of a criminal trial upon the liberty of one who may be deprived thereof only after full compliance with the constitutional requirements of due process. When a person accused of crime has been tried, defended, sentenced and, if he wishes, has exhausted his rights of appeal, the period of contentious litigation is over. The problem then becomes one of an attempt at rehabilitation and the progress of that attempt should be measured, not by legal rules, but by the considered judgment of those who make it their professional business. So long as that judgment is fairly and honestly exercised, a judgment which is subject to judicial review, we think there is no place for *required* counsel representation in the matter of parole revocation. In short, it is illogical to equate parole processes with criminal prosecutions and we conclude that due process does not require that indigent parolees be provided with counsel when they appear before the Parole Board, a member thereof, or an examiner designated by the Board.

There is another reason for affirmance which appears to us to be persuasively compelling here. The Court of Appeals for our sister Circuit, namely, for the District of Columbia, has just considered en banc in Hyser v. Reed, supra, what appears to be the precise question now before us even though arising under the general federal statute. It has decided that there is no constitutional right to assigned counsel in parole revocation hearings and it has construed the general parole statute as embodying the provision concerning permissive counsel representation inserted by Congress in the District of Columbia Code. The District of Columbia Parole Board must be expected to follow the directions of the Court of

---

9. Griffin v. Illinois, 351 U.S. 12, 19, 76 S. Ct. 585, 591, 100 L.Ed. 891 (1956): "[T]here can be no equal justice where the kind of trial a man gets depends on the amount of money he has."
Coppedge v. United States, 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).
Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), hold-

ing that in state prosecutions involving serious crimes counsel must be appointed to represent defendants who are unable to retain their own counsel.
Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963).
Lane v. Brown, 372 U.S. 477, 83 S.Ct. 768, 9 L.Ed.2d 892 (1963).

Appeals of the District of Columbia and to adjust its procedures to the requirements of that court. To us it would seem presumptuous for this court to undertake to lay down requirements for the governance of the District of Columbia Parole Board which are at variance with those laid down by the Court of Appeals of the District of Columbia. If we open the District Board's procedures to challenge by prisoners now confined at Lorton, while they are unassailable by District of Columbia law violators confined elsewhere, we would achieve only great disparity for the present and, for the future, a reversal of the effect of the en banc decision of the Court of Appeals for the District of Columbia. Neither result would become us, and the combination of both ought to be avoided.

We affirm the District Court's order denying Jones' petition for release from confinement and requiring the D. C. Board of Parole to grant Jones a new hearing after notice and after informing him of his right to be represented by counsel of his own choice and employment. According to our information, such a hearing has actually been held at which Jones waived his right to such representation. However, those proceedings are not properly before us on this appeal. Therefore, we remand the case to the District Court in order that it may determine Board compliance with the order of rehearing if so requested within a reasonable period of time.

Affirmed and remanded for further proceedings.

SOBELOFF, Chief Judge (concurring specially).

Because Jones has admitted the charge against him, namely, that he was convicted of seven traffic charges and disorderly conduct while on parole, I agree that the appointment of counsel was not required in this case.

While I concur in the result reached by the court, I regret that I cannot join in the able and thorough opinion of my Brother Boreman. My reservations concern hearings in which there is a dispute as to the events upon which recommitment of a parolee is sought. Judge Boreman's opinion makes no distinction between such hearings and others, like the one before us, where the occurrences charged are not challenged. The distinction is important. Judge Haynsworth, who recognizes that there may be cases where the absence of counsel could impair the fairness of revocation proceedings, comes closer to my view; but, as the subject seems to me to require further exposition, I state my views separately.

It is unnecessary to enter into an extended theoretical discussion of the resemblances and disparities between the trial of a criminal case in court and a parole revocation proceeding. The subject has been explored by Judge Boreman and by our brethren in the District of Columbia Circuit in the several opinions written in the case of Hyser v. Reed, 115 U.S.App.D.C. 254, 318 F.2d 225 (1963). Regardless of how such proceedings are to be characterized, each of the nine judges in Hyser concluded that the statutory command of the general parole statute, 18 U.S.C.A. § 4207, that an "opportunity to appear" be given, means that a parole who can pay a lawyer's fee is entitled to be represented when he is accused of violating the conditions of his parole and stands in danger of losing his restricted freedom outside and being returned to confinement within prison walls.

In light of the more explicit provision found in the D.C.Code, section 24–206, that "At such hearing [parole revocation] he [the alleged parole violator] may be represented by counsel," the critical question is whether another parolee may be denied counsel only because he is too poor to hire a lawyer, although he is in all other respects in the same situation.

Taking this approach, we are not called upon to decide what distinctions may constitutionally be drawn between revocation hearings and court trials. Even

before the District of Columbia parole law made express provision for representation by counsel before the District of Columbia Parole Board, the Court of Appeals for the District of Columbia Circuit, to avoid a possible constitutional problem, likewise interpreted the statutory words "opportunity to appear" to mean an effective appearance, including the right to be represented by counsel. Fleming v. Tate, 81 U.S.App.D.C. 205, 156 F.2d 848 (1946). The Congress codified this ruling by expressly providing that the prisoner may be represented by counsel. D.C.Code § 24–206 (Act July 17, 1947, 61 Stat. 379, ch. 263, § 5).

In this respect the District of Columbia Parole Act, which governs here, is more favorable to the parolee than the parallel statute, 18 U.S.C.A. § 4207, which regulates revocation proceedings before the Federal Board of Parole. Not only in Fleming v. Tate, which anticipated the statutory provision for counsel in District of Columbia Parole Board revocations, but also in a series of cases decided thereafter, the Court of Appeals for the District of Columbia Circuit held that the revocation hearing is to be no perfunctory formality. The right to counsel has repeatedly been declared a necessary safeguard, for personal freedom is involved. Reed v. Butterworth, 111 U.S.App.D.C. 365, 297 F.2d 776 (1961); Glenn v. Reed, 110 U.S.App. D.C. 85, 289 F.2d 462 (1961); Robbins v. Reed, 106 U.S.App.D.C. 51, 269 F.2d 242 (1959).

In unmistakable language the Supreme Court has in other contexts indicated that it will not sanction discrimination between indigents and those who possess the means to protect their rights. Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956); Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963); Lane v. Brown, 372 U.S. 477, 83 S.Ct. 768, 9 L.Ed.2d 892 (1963); Coppedge v. United States, 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1961). While

the cited cases were criminal prosecutions, there is no reason to attach significance to their technical classification as criminal rather than civil; the underlying feature to be noted is the fact that the liberty of the individual was involved.

The law does not undertake to redress all imbalances between rich and poor, but it can be said that when it is alleged and denied that the retaken prisoner has violated the conditions of his parole, and representation by retained counsel is permitted, this advantage should not be denied solely because of poverty.

The District of Columbia parole statute which affords an alleged parole violator the opportunity to be represented by retained counsel must be construed against the background of these Supreme Court decisions. Furthermore, as Judges Bazelon and Edgerton pointed out in Hyser v. Reed, 115 U.S.App.D.C. 254, 318 F.2d 225, 255 (1963), courts should hesitate to adopt a construction attributing to Congress a willingness to sanction discrimination between rich and poor where the issue at stake is the continued freedom of the alleged parole violator.

We deal here with no general investigation conducted for legislative purposes, as conceived in Hannah v. Larche, 363 U.S. 420, 80 S.Ct. 1502, 4 L.Ed.2d 1307 (1960), but the possible loss of the restricted liberty enjoyed by the parolee. While one on parole is not completely free, being theoretically in legal custody, there is still a vast difference between a state of such restricted freedom and actual imprisonment. See Jones v. Cunningham, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963).

At the revocation hearing, where the contested violation of parole may itself be a crime and result in loss of liberty, it is no less important to the prisoner to have counsel than it was in the original trial. It seems to me an insufficient answer to say that in extreme cases of arbitrariness or abuse there may be judicial review in which counsel will be appointed. After the administrative hearing is over, it may be too late for

counsel to overleap the handicap of an inadequate record.

It has been pointed out that the Parole Board and its agents have the duty of functioning in the interest of the individual in an advisory capacity and it is suggested that therefore they may be relied upon to see to it that the hearing will be conducted fairly and impartially. It is surely no reflection on these officials to recognize, what is commonly accepted in our system of jurisprudence, that there is inherent danger in combining the functions of judge and advocate. Judges and prosecutors are likewise under a duty to be fair to the accused and in most instances they strive conscientiously to give him every right that is due. Nevertheless, we do not rest content with this. We reason that the accused is still entitled to the benefit of counsel in the investigation and presentation of the defendant's version of disputed facts. We permit the defendant legal representation if he can afford to pay, and if he cannot we appoint a lawyer for him. At stake in a revocation hearing, when the parolee denies the violation, are issues no less momentous than in the original trial. The need for counsel cannot be assumed to be less, and we cannot avoid the Supreme Court's teaching that the right to this assistance should not "depend on the amount of money he has." Griffin v. Illinois, 351 U.S. 12, 19, 76 S.Ct. 585, 591, 100 L.Ed. 891 (1956).

Nor is our problem resolved by the euphemistic characterization of revocation proceedings as "parental." When the parole officer is engaged in an effort to prove that the parolee should be returned to prison for violating the conditions of his parole and the parolee denies the charge, it is incongruous to describe the proceedings as "non-adversary," particularly as under the statute the finding of a violation mandatorily results in extending the parolee's sentence.[1] The consequence of recommitment is not softened for the parolee by the use of benign words.

*Judge Boreman's opinion follows closely the reasoning of the court in Hyser v. Reed. Judge Burger for the majority in Hyser lays down what I consider valuable standards for the protection of the parolee at various stages of the revocation proceedings. All of his colleagues welcomed these as important steps forward; three judges who concurred separately gave their own emphasis to the right of the alleged parole violator to be accorded confrontation of the witnesses against him, access to the sources of information as to the alleged violation and the right of cross-examination. As a practical matter, however, these carefully enumerated rights often cannot be availed of except with legal assistance. The judges who dissented took the view that, since the right to the presence of counsel is accorded in order to assure these safeguards, the need for this protection is the same for all.*

If the Parole Board were to adopt a plan like that suggested by Judge Wright, providing a special type of assistance to the parolee in establishing his defense—a probation officer trained and independent but not necessarily a lawyer —we would have a different situation. Conceivably, the substance of the required protection to the parolee's interests *might be attained; but no such provision has been made and the question is not before us.*

There is much force in the comment on the great economic burden that members of the bar have been called upon to shoulder in the uncompensated representation of indigents. It is, as has been said, greatly to the credit of the profession that its members have, almost without exception, accepted this burden willingly and often even eagerly. At long

1. The District of Columbia Code, § 24–206, provides: "The time a prisoner was on parole *shall not be taken into account* to diminish the time for which he was sentenced." (Emphasis supplied).

Thus the result of the Board's decision in this case was the extension of the expiration of Jones' sentence from June 2, 1964, to July 31, 1965.

878

last Congress has enacted legislation to remunerate lawyers for such services rendered in federal criminal trials. The states, since Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), are doing likewise.

That Congress has not provided the means for the Parole Board to appoint counsel in revocation hearings should not deter us from our duty to declare the parolee's rights under the statute.[2] When the courts make such a declaration, Congress may be expected to provide the means to implement it, as illustrated by the Criminal Justice Act of 1964, P.L. 88–455, 88th Congress, S. 1057, approved Aug. 20, 1964. In the interval it is not beyond the resourcefulness of the Parole Board and the Department of Justice to make temporary provision for appointed counsel. That the Department would be hospitable to the idea is shown by the Report of the Attorney General's Commission on Poverty and the Administration of Criminal Justice, 1963, which, in discussing revocation hearings, has stated:

"[A]s a matter of equity, counsel should be supplied the prisoner who is financially unable to obtain representation. The Board's rules recognize that the prisoner with adequate means or who is otherwise capable of 'arranging' representation, is entitled to make use of the services of counsel at the hearing. We strongly feel that this advantage cannot fairly be confined to those financially able to purchase it and that the situation as it has now developed gives rise to serious inequity." At p. 49.

These comments emphasize that where the issue is a factual one, i. e., whether the parolee has violated the conditions of his parole; the parolee, be he affluent or indigent, requires the assistance of counsel. Such assistance is needed to insure that, in the determination of the factual issues before the Parole Board, the accused parolee is afforded all of the procedural safeguards to which he is entitled. Thus the appointment of counsel is required where the accused parole violator is indigent and denies that he has violated the conditions of his parole.

As recognized in the opening paragraph of this opinion, the situation is different in this case, since the parolee concedes that he has violated the conditions of his parole. Here the Parole Board is merely exercising its discretion as to whether, in light of the admitted violation, parole should be revoked. I agree that, usually in such situations, the purpose of the hearing is unlike that of an adjudicatory proceeding, and there is no requirement for the appointment of counsel.

HAYNSWORTH, Circuit Judge (concurring specially).

If I were to accept the premise that representation by counsel is essential to a meaningful appearance by a parolee before a parole board, I would have great difficulty in finding justification for a scheme which made provision for such an appearance by those who could afford it without providing for such an appearance by those who could not afford it. I do not accept the premise, however. I think Judge Fahy was correct in pointing out in his opinion in Hyser v. Reed, 318 F.2d 225, 257, that, while representation by counsel may be essential to a meaningful appearance in some extraordinary parole proceedings, it is not essential in the kind of routine revoca-

2. Cf. Powell v. Alabama, 287 U.S. 45, 60, 53 S.Ct. 55, 77 L.Ed. 158 (1932), where the Supreme Court concluded that its lack of power to appoint counsel in the Alabama courts did not affect "The question * * * which it is our duty, and within our power, to decide * * * whether the denial of the assistance of counsel contravenes the due process clause * * *."

tion hearing with which we are concerned. The differences between such proceedings and criminal trials are so great that procedural requirements quite appropriate to. trials ought not to be mechanically imposed in absolute terms upon parole boards. The process should be selective. The present requirement of fairness, I would suppose, would require the parole board to arrange counsel for the parolee in the extraordinary case in which fairness could not be had without it. In the routine case, however, if fairness is not impaired by the absence of counsel, then a parole board's failure to supply counsel is not a deprivation of any meaningful right available to a wealthy parolee.

A possible extension to parole revocation proceedings of a universal requirement of counsel at every hearing ought not to be undertaken without regard to the impact of the requirement upon the parole process. Judge Wright in his opinion in Hyser v. Reed, 318 F.2d 225, 261, wisely points up the considerations. A rigid imposition of a procedural requirement for all cases, which serves no useful purpose in most but which unduly burdens the entire process, would be a long step backward, not forward, in the protection of personal liberties.

In this case, therefore, in which there is no contention of actual unfairness, I readily join my Brother Boreman in his opinion, in which he demonstrates, I think, that the Constitution does not require a parole board to furnish appointed counsel in a routine revocation hearing when the fairness of the proceeding will not be impaired by the absence of counsel.

Had I any doubt about the matter, however, and I confess none, I would be constrained in the circumstances of this case to defer to the decision of our Sister Circuit for the reasons stated by Judge Boreman.

